[Civ. No. 14738.   First Dist., Div. Two.   May 2, 1951.]

ARGONAUT MINING COMPANY, LTD. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Keith, Creede & Sedgwick and B. K. Wines for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger and Robert Ball for Respondents.

NOURSE, P. J.—Sabino Gonzalez filed an application with the Industrial Accident Commission on December 22, 1948, against petitioner and others. He alleged an injury arising out of and in the course of employment with petitioner, to wit, occupational silicosis. He had worked as a miner for petitioner and others from June, 1923, to December, 1928, exposed to silica hazards. From December, 1928, to August 20, 1948, he engaged in other occupations which did not expose him to silicosis. Gonzalez died before his case went to decision. His dependents then filed an application for an industrial death benefit, which claim was consolidated and heard with the disability claim. Respondent commission made an award on July 21, 1950, finding that on *November 23, 1948,* Gonzalez sustained a *compensable injury* consisting of silicosis which caused his death on April 9, 1949. An award was made jointly and severally against petitioner and others.

The death benefit and the accrued temporary indemnity were based upon the rates in effect according to the statutes of 1948. Based upon the statutes in existence in 1948, the total award was for $6,415.20. If the award were based upon the statutes in existence in 1928, petitioner alleges, the total award would have been for $4,334.85.

Petitioner's contentions are twofold. (1) Due process is violated because retroactive effect is given to the 1948 statutes. (2) The commission's award violates the contract impairment clause of the California and United States Constitutions in not following the law in effect in 1928. It concedes that the application was timely filed and that the case is compensable.

With respect to the constitutional inhibition against

the legislative impairment of the obligation of contracts, petitioner's position is summarized in the following language: "At the time Gonzalez was hired by your petitioner, the parties dealt in contemplation of the statutes in existence in 1928. The statutes in existence at that time became an integral part of the contract of employment." In support of this contention petitioner cites *Brown* v. *Ferdon*, 5 Cal.2d 226 [54 P.2d 712]. In that case the statute in question purported to remove a civil remedy that had been available for the enforcement of contracts at the time the particular contract was entered into. The court held that the remedy existing at the time the contract was entered into became a part of the contract and could not be later taken away by the Legislature.

In *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388 [182 P.2d 159], it was held that certain additional benefits were not to be awarded to the workman when these benefits were provided for after the workman was *injured*. This was on the ground, however, that the added law was intended to operate only prospectively, and not retrospectively. There is in the opinion the recognition that had the Legislature disclosed an intent to have the additional benefits operate retrospectively, the law would have been a valid exercise of police power and not in violation of the inhibitions against the impairment of the obligation of contracts.

*Alaska Packers Assn.* v. *Industrial Acc. Com.*, 1 Cal.2d 250 [34 P.2d 716]; *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190], and *North Alaska Salmon Co.* v. *Pillsbury*, 174 Cal. 1 [162 P. 93, L.R.A. 1917E 642], all deal with the extraterritorial effect of the compensation act. They hold uniformly, however, that the right to, and liability for, compensation established by the act are not founded upon contract, but are statutory rights and duties arising from the employer-employee relationship, and are imposed by the law as incidents of that status. (See Campbell, Workmen's Compensation, vol. I, pp. 20-23, §§ 26, 27; Horovitz on Workmen's Compensation, p. 12 et seq.)

On the question of due process petitioner cites *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388 [182 P.2d 159]. As has been pointed out, this case held that the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery and thus additional benefits made available by law after an injury could not be granted an injured workman as this would be giving

retrospective operation to a law which was construed to be prospective in operation only. The question in the instant case is, however, what is the date of injury for the purposes of compensation in cases of occupational disease? Obviously if it is held that for the purposes of compensation the date of injury in cases of occupational disease is that moment in time when the disease results in disability, then the award was proper, as Gonzalez's disability from silicosis occurred after the 1948 statutes.

The contentions of the parties are simple. Petitioner asserts that the date of injury for the purposes of fixing the amount of compensation to be awarded is the last date that the workman was exposed to the silica dust as an employee of petitioner or the date of Gonzalez's employment by petitioner. The commission asserts that in the case of an occupational disease industrial injury does not occur until disability results. Respondents cite *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933] ; *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388 [182 P.2d 159], and Labor Code, § 5412, for this principle.

The Marsh case dealt with the date of injury as regards an occupational disease with reference to the statute of limitations. The case holds that the injury in such cases is not deemed to have occurred until compensable disability results. Thus, for the purposes of computing the statute of limitations, the date of injury in cases of occupational disease is that time when the disease culminates in a compensable disability.

After the Marsh case, two sections were added to the Labor Code (1947). Section 5411 reads: "What constitutes date of injury. The date of injury, except in cases of occupational disease, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

Section 5412 reads: "Same: Occupational diseases. The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment." Both sections were added by Stats. 1947, chapter 1034, sections 5 and 6.

These sections are incorporated into division 4, part 4, chapter 2 of the Labor Code. Division 4 of the code deals with workmen's compensation and insurance; part 4 of division 4 deals with compensation proceedings; chapter 2 of

part 4 deals with, and is headed, "Limitations of Proceedings." This would seem to lend support to petitioner's contention that section 5412 of the Labor Code deals with the date of injury in cases of occupational diseases only for the purpose of computing the statute of limitations in such cases.

But respondent commission's position is just as logical. Regardless of the date of exposure to disease, the claimant has no cause of action and no rights accrue to him until that point in time when the cumulative effects of his disease result in a compensable disability. It would seem that the law then in effect should govern the claimant's rights.

It would seem logical that even if the Marsh case and the subsequent changes in the code sections are held to set the "date of injury" in cases of occupational disease only for the purpose of relieving a sufferer from occupational disease from the operation of the statutes of limitation, a necessary corollary would be that it also sets the date for the measurement of compensation payable, and all other incidents of the workman's right. Until the disability there is no compensable injury. When the disease results in disability there then comes into existence for the first time a right in the petitioner to seek compensation. When the right comes into existence certain rates are applicable. It would seem that these are the rates by which compensation should be payable.

█ Our Workmen's Compensation Law expressly provides that it shall be liberally construed (Lab. Code, § 3202). When it is considered that in a silicosis case the workman may have worked in 10 mines over a 20-year period, and that the amount of benefits and other provisions of the law may have undergone 10 changes in the same 20-year period, benefits being added and taken away, and raised and lowered, a reasonable construction of the act is that the rate and amount of compensation, and the liability of the several employers must be determined by the commission on a consideration of all the facts of employment no matter how remote. Such a determination would not violate any constitutional right of any of the employers.

The award is affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied June 1, 1951, and petitioner's application for a hearing by the Supreme Court was denied June 28, 1951. Schauer, J., voted for a hearing.