[Civ. No. 22964. Third Dist. Mar. 20, 1984.]

J. T. THORP, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD
and WILLIAM B. BUTLER, Respondents.

COUNSEL

Mullen & Filippi, William J. O'Neil and William J. Armstrong for Petitioners.

David P. Mastagni, Douglas E. Jaffe and Peter O. Slater for Respondents.

## Opinion

SIMS, J.—In this case of first impression in the appellate courts, we address the question whether an employee suffering from asbestosis[1] can obtain workers' compensation reimbursement for disease-related medical expenses incurred in the disease's latent stages prior to the onset of any occupational disability. If so, does the pursuit of such a claim by the employee trigger statutes that limit the employer's exposure for medical or disability claims to those filed within five years of the employee's initial diagnosis even if the disease subsequently progresses to serious and disabling stages?

We conclude an employee suffering from asbestosis may obtain reimbursement for predisability medical expenses. Moreover, an award of such expenses does not prohibit the board from awarding additional compensation for medical expenses or for disability manifesting itself more than five years after initial diagnosis or treatment. We therefore affirm the board's decision and award in this case.

In reaching our conclusion, we are called upon to interpret a complex statutory scheme not originally designed to deal with the peculiar problems of asbestosis.[2] Although, as we shall see, workers' compensation statutes have been amended piecemeal over the years in an attempt to deal with the problem of long-term latent disease, these attempts have not produced a wholly coherent matrix of statutes.

---

[1] "'Asbestos' is the generic name given to a group of hydrated silicate minerals that can be separated into relatively soft, silky fibers which have great tensile strength, the quality that makes it as useful in industry as it is harmful to soft internal human tissue. Use of this material in occupational settings has become widespread because of its physical properties which make it ideal for a myriad of uses, primarily as a fireproofing and insulating material. The widespread industrial exposure has led to the recognition in the medical community of a number of asbestos-related diseases including parenchymal asbestosis, pleural asbestosis, pulmonary carcinoma and mesothelioma. The latter is a disease of the mesothelial surface lining (i.e. chest and stomach lining) described by one authority as follows:

" '. . . It is a diffuse malignancy which spreads across the serous surfaces. Medical studies disagree whether pleural or peritoneal mesothelioma is more prevalent among asbestos workers. Although increasing dyspnea may be the presenting symptom, the onsent [sic] of pleural mesothelioma is insidious and progressive. The same is true of peritoneal mesothelioma except that weight loss is an early symptom.

" 'Asbestos is generally acknowledged to be the major cause of mesothelioma but there is doubt whether it is the sole cause. Unfortunately, the dose required to produce a malignancy is comparatively trivial and, because of the 25-40-year latency period, the exposure is sometimes overlooked in an occupational history.' Christopher C. Mansfield, *Asbestos: The Cases And The Insurance Problem*, (summer 1980) the Forum, American Bar Association, page 864." (*Piedemonte* v. *Western Asbestos et al.* (1981) 46 Cal.Comp.Cases 475, 479 (en banc opn.).)

[2] See generally, California Workmen's Compensation Practice (Cont.Ed.Bar 1973) section 1.6, pages 6-7.

Needless to say, we think the problem at hand is correctly solved according to presumptions mandated by law. But we recognize that our synthesis of the applicable workers' compensation statutes leaves this statutory universe with perplexing quarks. Accordingly, we suggest that some statutory cleanup work by the Legislature would be in order.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Evidence and testimony introduced at William Butler's hearing before a worker's compensation judge (hereafter WCJ) revealed the following:

Butler worked for petitioner J. T. Thorp, Inc. as an asbestos mixer-operator in 1945 and 1946. In 1978 Butler suffered from pneumonia and had X-rays taken by lien claimant Permanente Medical Group at Kaiser Hospitals. The X-rays revealed that Butler had asbestosis. X-rays taken in 1980 and 1981 showed that the asbestosis had progressed, but doctors decided against attempting surgery. Butler remains in general good health and bicycles daily. The sole medical opinion concluded that Butler was not disabled as of the time of the opinion, but annual chest X-rays were recommended. Lien claimant Permanente Medical Group presented an itemization of expenses for X-rays and associated services in the amount of $322.40.

Although not entirely clear from the record, it appears that Butler sought in his compensation proceeding to recover disability indemnity as well as reimbursement for medical expenses.[4]

Following the hearing the WCJ issued findings of fact, finding inter alia that: "[¶] 3. *It is too early to determine the date of injury, as injury had not yet caused either compensable temporary disability or permanent disability.* [¶] 4. *It is too early to rate for permanent disability.* [¶] 5. Applicant's claim is not barred by the statute of limitations. [¶] 6. Further medical treatment is required to cure and relieve from the effects of said injury. [¶] 7. Applicant has reasonably incurred expense for self-procured medical treatment in the sum of $322.40 by Permanente Medical Group-Kaiser Foundation Hospitals, for which he is entitled to reimbursement, payable directly to Permanente Medical Group." (Italics added.)

---

[3]For example, Labor Code sections 3208.1 and 5405 could be amended to make clear that they do not prohibit the filing of predisability claims for medical expenses in cumulative injury and occupational disease cases. (See discussion in part I-C, *post.*)

[4]Butler's application for adjudication of claim contained a series of boxes which were checked off so as to indicate that it was filed because of a "disagreement regarding" liability for temporary and permanent disability indemnity, reimbursement for medical expenses, medical treatment, and "election against single employer during cumulative [*sic*]."

The WCJ made an award for "(a) Such further medical treatment as is reasonably required to cure and relieve from the effects of the injury herein" and "(b) Reimbursement of expense of self-procured medical treatment as set forth in Finding No. 7 [for the treatments at Kaiser]."

Petitioners' petition for reconsideration was denied by the board, and this petition followed.

Petitioners contend that: (1) the board acted without or in excess of its powers by failing to determine a "date of injury" for Butler's industrially related asbestosis (Lab. Code, § 5412)[5]; (2) the board's "deferral" of a finding of permanent disability was beyond or in excess of its powers; and (3) the WCJ's decision is not supported by substantial evidence.

## DISCUSSION

### I

In order to place petitioners' contentions in their proper context, we begin with an overview of the pertinent provisions of California's Workers' Compensation Act (hereafter Act).

### A

Compensation may be awarded under the Act for any injury or disease arising out of and in the course of employment. (§§ 3208, 3600; *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 865 [101 Cal.Rptr. 105, 495 P.2d 433]; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, § 112, p. 944.) The Act defines "injury" broadly[6] to include both injuries and diseases; and it separates "injuries" into two categories, " 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment," and " 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending

---

[5]All further statutory references are to the Labor Code unless otherwise indicated.

[6]Section 3208 provides that " 'Injury' includes any injury or disease arising out of the employment, including injuries to artificial members, dentures, hearing aids, eyeglasses and medical braces of all types; provided, however, that eyeglasses and hearing aids will not be replaced, repaired, or otherwise compensated for, unless injury to them is incident to an injury causing disability."

Section 3208.1 provides in its entirety that "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. The date of a cumulative injury shall be the date determined under Section 5412."

over a period of time, the combined effect of which causes any disability *or* need for medical treatment." (§ 3208.1, italics added.)

A compensable injury may render the employer liable for, among other things, the cost of medical treatment (§ 4600; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294]; 2 Witkin, *op. cit. supra,* § 161, p. 986) and indemnity for temporary or permanent disability (§ 4650 et seq.; *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 257 [78 Cal.Rptr. 497, 455 P.2d 425]; 2 Witkin, *op. cit. supra,* § 168, p. 990).

█ Medical treatment and disability indemnity are separate and distinct elements of compensation which fulfill different, though complementary, legislative goals. Employer liability for medical and surgical services is provided in major part in order to facilitate the worker's speedy recovery and to maximize his productive employment. (*Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496, 500 [62 Cal.Rptr. 753, 432 P.2d 361].) █ Temporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income. (See *Granado* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at pp. 403-404.) █ Permanent disability indemnity has a dual function: to compensate both for actual incapacity to work and for physical impairment of the worker's body, which may or may not be incapacitating. (*Id.,* at p. 404.)

Employer liability for medical treatment is provided by section 4600.[7] It is not surprising, in light of the different purposes underlying medical and disability indemnity compensation, that section 4600 imposes no requirement that the employee be disabled in order to qualify for medical treatment compensation. Rather, section 4600 speaks merely in terms of relieving the effects of "the injury," which is broadly defined in section 3208 to include *any* injury or disease arising out of the employment, whether disabling or not. (See fns. 6 & 7, *ante.*)

Pursuant to the statute of limitations set forth in section 5405,[8] original proceedings for disability indemnity and medical care may be commenced

---

[7]Section 4600 provides in pertinent part that "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment. . . ."

[8]Section 5405 provides that "The period within which may be commenced proceedings for the collection of the benefits provided by Articles 2 or 3, or both, of Chapter 2 of Part 2 of this division is one year from: [¶] (a) The date of injury; or [¶] (b) The expiration of any period covered by payment under Article 3 of Chapter 2 of Part 2 of this division; or [¶] (c) The date of last furnishing of any benefits provided for in Article 2 of Chapter 2 of Part 2 of this division." See also section 5404, set forth in footnote 9, *post.*

within one year from: (1) the date of injury; or (2) the expiration of the period covered by the employer's last payment of disability indemnity; or (3) the date of the last furnishing by the employer of medical, surgical or hospital treatment, whichever period is most favorable to the employee. (Cal. Workmen's Compensation Practice, *op. cit. supra*, § 4.13, p. 101; *Colonial Ins. Co.* v. *Ind. Acc. Com.* (1945) 27 Cal.2d 437, 441 [164 P.2d 490]; see also 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed., 1983 rev.) § 18:02, pp. 18-9—18-10; 2 Witkin, *op. cit. supra*, §§ 233-235, pp. 1046-1047.)

Section 5404[9] provides that the timely filing of an application with the board for compensation renders the statutes of limitations (§§ 5404-5412) inoperative as to all further claims by the filing party against the named defendants for that injury. (2 Hanna, *op. cit. supra*, § 18.02, pp. 18-9—18-10.) Section 5404 then provides that once a claim is filed, any further claims against the same defendants "for compensation arising from that injury" are governed by sections 5803 through 5805.[10] (See fn. 9, *ante*.) "In essence sections 5803-5805 (referred to, as noted, in § 5404) confer continuing jurisdiction to the commission over its orders, decisions and awards which, for good cause shown, the commission can 'rescind, alter or amend' or 'review, grant or regrant, diminish, increase or terminate' (§ 5803) *with-*

---

[9]Section 5404 provides that "Unless compensation is paid within the time limited in this chapter for the institution of proceedings for its collection, the right to institute such proceedings is barred. The timely filing of an application with the appeals board by any party in interest for any part of the compensation defined by Section 3207 renders this chapter inoperative as to all further claims by such party against the defendants therein named for compensation arising from that injury, and the right to present such further claims is governed by Sections 5803 to 5805, inclusive."

[10]Section 5803 provides that "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division, and the decisions and orders of the rehabilitation unit established under Section 139.5. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor.

"This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."

Section 5804 provides that "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition. Provided, however, that after an award has been made finding that there was employment and the time to petition for a rehearing or reconsideration or review has expired or such petition if made has been determined, the appeals board upon a petition to reopen shall not have the power to find that there was no employment."

Section 5805 provides that "Any order, decision, or award rescinding, altering or amending a prior order, decision, or award shall have the effect herein provided for original orders, decisions, and awards."

*in five years from date of injury* (§ 5804), such changes having the effect of the original order (§ 5805)." (*Royal Indem. Co. v. Industrial Acc. Com.* (1966) 239 Cal.App.2d 917, 920 [49 Cal.Rptr. 224], italics added; see 2 Hanna, *op. cit. supra,* § 18.02[2], pp. 18-9—18-10.)

▮ Although sections 5803-5805 appear on their face to confer continuing jurisdiction over all classes of supplemental claims, supplemental claims for "new and further disability" and "vocational rehabilitation benefits" are governed by section 5410,[11] not sections 5803-5805. (See *Zurich Ins. Co. v. Workmen's Comp. Appeals Bd.* (1973) 9 Cal.3d 848, 854-858 [109 Cal.Rptr. 211, 512 P.2d 843] (conc. opn. of Sullivan, J.).)[12] Under section 5410, an employee who has previously been furnished workers' compensation benefits either voluntarily by the employer or pursuant to a board award is entitled to claim benefits for new and further disability within five years after the "date of injury." (§ 5410; *Standard Rectifier Corp. v. Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 290 [54 Cal.Rptr. 100, 419 P.2d 164]; cf. *Piedemonte v. Western Asbestos et al., supra,* 46 Cal.Comp.Cases at p. 483; 1 Hanna, *op. cit. supra,* § 9.03, p. 9-21.)

In short, once an employee files a claim for compensation against an employer for an "injury," the board's jurisdiction to award additional compensation arising out of the same injury (even if styled "new and further disability") from that employer is limited to five years from the "date of injury." (§§ 5410, 5803-5805; *Liberty Mut. Ins. Co. v. Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 265, 273 [173 Cal.Rptr. 349].)

---

[11]Section 5410 provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability or the need for vocational rehabilitation benefits. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction at all times within this period. This section does not extend the limitation provided in Section 5407."

[12]"'Although long the subject of misunderstanding and controversial litigation, it is now clear that Labor Code section 5410, and not Section 5804, controls the Appeals Board's continuing jurisdiction over new and further disability claims. Section 5410, by its terms, is expressly made paramount to the other sections of the statute of limitations, including Section 5404. Hence, the provision of the latter section that Sections 5803-5805 shall control the right to present further claims after the timely filing of an application, does not apply to supplemental new and further disability claims. The latter are governed by Section 5410, despite the fact that the period within which the Board must act under Section 5803 and 5804 is applicable to all other supplemental claims.' (1 Hanna, *op. cit. supra,* § 9.03[4], pp. 9-23, 9-24, fns. omitted; see also *Broadway-Locust Co. v. Ind. Acc. Com., supra,* 92 Cal.App.2d 287, 292-293.)" (*Zurich Ins. Co. v. Workmen's Comp. Appeals Bd., supra,* 9 Cal.3d at p. 857 (conc. opn. of Sullivan, J.).) In this case we have no occasion to consider whether Butler will need to bring supplemental claims under section 5804 or section 5410, nor do we address possible practical differences in the two statutory procedures. (But see *Zurich Ins. Co., supra,* at pp. 855-857.)

■ But what is meant by "date of injury?" The term is defined by statute. Labor Code section 5411[13] provides in pertinent part that the "date of injury" for most injuries is "that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

For cumulative injuries and occupational diseases this definition is inadequate, however, as there is no single date on which an incident or exposure can be said to have occurred. (See *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 571 [68 Cal.Rptr. 164, 440 P.2d 236].) Accordingly, the Legislature has provided a second definition of "date of injury," specifically applicable to cumulative injuries and occupational diseases such as asbestosis. Labor Code section 5412 provides that, "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee *first suffered disability therefrom* and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (Italics added.) (2 Hanna, *op. cit. supra,* § 18.03[5], pp. 18-17—18-18; 2 Witkin, *op. cit. supra,* § 235, pp. 1046-1047.) The term "disability" as used in section 5412 is, of course, to be given the same meaning as elsewhere in the Act (see *Estate of Downing* (1982) 134 Cal.App.3d 256, 265 [184 Cal.Rptr. 511]), i.e., an impairment of bodily functions which results in the impairment of earnings capacity. (*Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338, 344 [18 P.2d 933, 86 A.L.R. 563]; see *Associated Indem. Corp.* v. *Ind. Acc. Com.* (1945) 71 Cal.App.2d 820, 824 [163 P.2d 771]; 2 Hanna, *op. cit. supra,* § 13.01, p. 13-2.)[14] Accordingly, where an employee suffers from a cumulative injury or occupational disease, there is a "date of injury" only at such time as the employee suffers an impairment of bodily functions which results in the impairment of earnings capacity.

■ With this overview in mind, we turn to petitioners' contention that the board had a duty to set a date of injury.

B

With refreshing candor, petitioners admit that their attempt to make the board set a "date of injury" is designed to trigger the five-year limit on the

---

[13]Labor Code section 5411, contained in the chapter on "limitations of proceedings," provides that "The date of injury, except in cases of occupational disease or cumulative injury, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

[14]"Disability," as used in the Act, has also been defined as having two elements: (1) the actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom and (2) physical impairment of the body. (*Perry* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 887, 890 [136 Cal.Rptr. 309].)

board's power to award compensation. (§§ 5410, 5804.) Petitioners contend they are legally entitled to have a date of injury set and desire such so that they may rationally plan for their monetary exposure for Butler's disease.

Petitioners' articulated contention is easily disposed of. As we have noted, section 5412 specifies that, in cases of occupational diseases, the "date of injury" occurs only at such time as an employee becomes disabled. The evidence before the board was uncontradicted that Butler was not disabled because he had suffered no impairment of earnings capacity. (See 2 Hanna, *op. cit. supra,* § 13.01, p. 13-2.) The board's finding of fact number 3 properly states that "It is too early to determine the date of injury, as injury has not yet caused either compensable temporary disability or permanent disability." Since no statutory "date of injury" had occurred in Butler's case, the board had no duty to set it.

We note that *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1983) 145 Cal.App.3d 480 [193 Cal.Rptr. 471], cited by the board, is not on point. *Industrial Indemnity* involved the application of section 5500.5 which limits the liability of employers for occupational diseases or cumulative injuries arising from more than one employment. Section 5500.5 provides in pertinent part that liability for such injuries or diseases shall be limited to those employers who employed the employee during the one to four years "immediately preceding either the date of injury, as determined pursuant to Section 5412, *or* the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first." (Italics added.)

In *Industrial Indemnity* the WCJ did not determine which of several employers should be held liable for the employee's asbestosis but instead deferred a determination of the issue, reasoning that " '[d]epending upon what labor disabling asbestos related condition the applicant may ultimately develop, the last *injurious* exposure may vary.' " (*Id.,* at p. 484; italics added.) The WCJ was concerned that the latency periods of different asbestos-related diseases were different by a factor of several years, and he wished to defer fixing liability on a particular employer until it became known which, if any, disease(s) the applicant would develop. (*Ibid.*) The court of appeal held that the WCJ's deferral of employer liability was error, inasmuch as section 5500.5, in the words of the court, "authorizes finding that *the last date of occupational exposure to the disease-producing agent* asbestos, is the pertinent *date of injury* for the occupational disease asbestosis, in the absence of evidence that a different period of exposure was exclusively hazardous." (*Id.,* at p. 486; first italics original; second italics added.) Concluding there was no substantial evidence indicating any dispute

as to the employee's last date of exposure, the court held deferral of employer liability was error. (*Ibid.*)

The *Industrial Indemnity* court's reference to "the pertinent *date of injury*" (as opposed to period of exposure) was both gratuitous and unfortunate. The statute construed by the court, section 5500.5, itself distinguishes between a "date of injury" and last date of employment in an occupation exposing an employee to hazards: either is sufficient to fix the identity of employers liable for the employee's injury. Consequently, for purposes of section 5500.5, "date of injury" is not the same thing as the last date of exposure.

Nor was "date of injury" at issue in the *Industrial Indemnity* case. The dispute in the case under section 5500.5 focused exclusively on last date of employment exposing the employee to hazards, not "date of injury." Moreover, the court was not at all concerned with when such exposure would lead to employee disability. (Cf. *Smith* v. *Johns-Manville Products Corp.* (1981) 46 Cal.Comp.Cases 557, 562.) In short, nothing in section 5500.5 or in *Industrial Indemnity* properly suggests that "date of injury" is to be determined other than by reference to when the employee became disabled and was aware of industrial causation as stated in section 5412. The case has no bearing on the questions at hand.[15]

A question not specifically posed by petitioners,[16] but implicitly necessary to our holding and to a rational resolution of this case, is whether Butler could legally claim compensation for his asbestosis-caused medical expenses incurred prior to the onset of disability and a "date of injury." After all, how can an employee possibly be compensated for an "injury" when there has been no "date of injury?" That question is not so easily answered.

## C

An employee suffering from asbestosis faces three hurdles in an attempt to recover pre-disability (and therefore predate-of-injury) medical expenses. The first is that the statute of limitations in section 5405 provides that *the period within which to commence proceedings* for medical treatment and disability indemnity compensation *is one year from the "date of injury,"* or the last furnishing of benefits. (See *Colonial Ins. Co. v. Ind. Acc. Com.,*

---

[15]The WCJ's finding of fact number 8 reflects a proper application of section 5500.5 to determine the years of exposure for which the petitioners are liable.

[16]We readily understand how petitioners could rationally forego any argument that Butler's claim for expenses ($322.40) was premature in the hope of triggering the five-year limit on the board's power to make a disability award.

*supra*, 27 Cal.2d at pp. 440-441; see also fn. 8, *ante*.) A question logically arises, whether, in occupational disease and cumulative injury cases where the employer has furnished no benefits, compensation for medical treatment may be applied for during the disease or injury's early stages, *prior to* the onset of disability and the statutory "date of injury." (§ 5412.) The question is obviously not entirely free from doubt, inasmuch as the phrase "period within which may be commenced proceedings" in section 5405 connotes a beginning as well as an ending point.[17]

The second hurdle faced by such an employee seeking predisability recovery is dictum in *Fruehauf Corp.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 569, that "The term 'injury' means a compensable injury or an incapacity or disability justifying the award of compensation, and *it is at the time when disability occurs that the employer's liability becomes fixed and the employee has suffered an injury in a legal sense.*" (68 Cal.2d at p. 573, italics added.)

The third hurdle is section 3208.1, which defines "cumulative" injury and provides in pertinent part, "The date of a cumulative injury shall be the date determined under Section 5412." (See fn. 6, *ante*.) As we have seen, section 5412 requires that an employee be disabled in order for a "date of injury" to occur.[18]

We approach the first hurdle: whether Butler's claim was premature under section 5405.

The board addressed the issue of predisability, pre-"date of injury" awards for diagnostic medical expenses in *Piedemonte* v. *Western Asbestos et al., supra,* 46 Cal.Comp.Cases 475. There, the WCJ found that the applicant had sustained an industrial injury from asbestosis but had suffered no permanent disability therefrom. (P. 475.) Consequently, relying on section 5412, the WCJ found no "date of injury." (P. 477.)

The board noted the paradox in the WCJ's decision, that there was an injury without a "date of injury." (P. 478.) The board resolved the paradox, however, by noting the limited purposes which the "date of injury" serves in workers' compensation law. The board reasoned that the "date of injury" is used to trigger the running of statutes of limitations and as a point at which to fix disability indemnity rates. The board noted that in the case before it no issue had been raised as to the statute of limitations or as to temporary disability compensation, and that no permanent disability then

---

[17]Here lies our first quark.

[18]Here lies a second quark.

existed. The board concluded that it was unnecessary to find a "date of injury" at that time. (*Ibid.*)

 Implicit in the board's analysis in *Piedemonte* is the simple fact that the "date of injury" is a statutory construct which has no bearing on the fundamental issue of whether a worker has, in fact, suffered an industrial injury. Hanna, in his treatise, makes the point explicitly: "The date of injury and the fact of injury are not equivalent and it is therefore possible for the [board] to find that an employee has sustained a cumulative industrial injury or occupational disease without making a finding as to the date of injury where the injury has caused no temporary or permanent disability, but has resulted in a need for medical treatment." (2 Hanna, *op. cit. supra,* § 18.03[6], p. 18-21.) We find *Piedemonte* and Hanna persuasive.

Moreover, *Piedemonte* and Hanna are consistent with the legislative goals underlying the Act. As we noted in part I-A, *ante,* section 4600 imposes no requirement that medical treatment compensation be conditioned on the employee's inability to work. Indeed, the legislative intent to maximize an employee's productive employment suggests that medical treatment should be available, when necessary, *before* the injury or disease actually forces the worker from the job. Interpreting sections 5405 and 5412 so as to modify section 4600 and thereby deny medical treatment until disability sets in could foolishly deprive the worker of the proverbial ounce of prevention and force upon him (and his employer's insurance carrier) the proverbial pound of cure.

We note, as well, that the purpose of these statutes of limitations (§§ 5405, 5412) is to insure the prompt presentation of compensation claims. (2 Hanna, *op. cit. supra,* § 18.02, p. 18-9.) Interpreting section 5405 and 5412 to preclude compensation for medical treatment until the onset of disability would in no way further the intent of those sections; instead, it would simply have the perverse and obviously unintended effect of discouraging an employee's timeliness in pursuing medical attention.

Furthermore, we must remember *Fruehauf*'s admonition that the "date of injury" in latent disease cases "must refer to a period of time rather than to a point in time." (*Fruehauf Corp.* v. *Workmens' Comp. App. Bd., supra,* 68 Cal.2d at p. 573.) The employee is, in fact, being injured prior to the manifestation of disability. There is no reason why an employee should not be eligible for medical treatment compensation once the industrial injury has commenced and its presence is medically ascertainable.

We therefore construe section 5405 in accordance with its obvious purpose as a statute of limitations. Absent tolling, section 5405 may bar a claim

for compensation filed more than one year from "date of injury" as defined in section 5412. However, section 5405 does not preclude the filing of a claim for medical expenses before occurrence of a "date of injury."

We therefore turn to the second hurdle in the way of Butler's predisability recovery: *Fruehauf's* dictum that "it is at the time when disability occurs that the employer's liability become fixed and the employee has suffered an injury in the legal sense." (*Fruehauf Corp.* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 573.)

Viewed in isolation, this passage could cast doubt upon our conclusion that medical treatment is compensable prior to the "date of injury." It could suggest that an employee suffers no legally cognizable harm until he is disabled. *Fruehauf*, however, was concerned only with the question of whether the one-year statute of limitations began to run before the employee became disabled; the case was not at all concerned with the question now before us.

In *Fruehauf* the court traced the origin of section 5412 to its decision in *Marsh* v. *Industrial Acc. Com.*, *supra*, 217 Cal. 338, decided some 14 years before the enactment of sections 5411 and 5412. (Stats. 1947, ch. 1034, §§ 5, 6, p. 2307.) In *Fruehauf*, the court explained *Marsh* as follows: "When latent injuries from accidents do not at first indicate a disability which is compensable, *an employee is not to be deprived of compensation for failure to demand his rights under the act before the disability reasonably can be ascertained.*" (*Fruehauf, supra,* 68 Cal.2d at p. 573, italics added.)

*Fruehauf* leaves little doubt that the purpose of section 5412 was to prevent a premature commencement of the statute of limitations, so that it would not expire before the employee was reasonably aware of his or her injury. Moreover, the case emphasized that limitations provisions in the workers' compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute. (*Id.,* at p. 577.) It would violate the entire spirit of *Fruehauf* to hold that medical treatment is not compensable until the onset of disability. We conclude Butler should clear the *Fruehauf* hurdle.

We therefore approach Butler's final obstacle to predisability recovery: the last sentence of section 3208.1, which provides that "The date of a cumulative injury shall be the date determined under Section 5412."

Although section 3208.1 is contained in a "definitional" portion of the code, we discern from its legislative history no intent to define the *fact* of

cumulative injury out of legal cognizance until the arrival of the "date of injury." Rather, the statute's history shows the purpose of the pertinent language in section 3208.1 is simply to provide a single statute of limitations for both occupational diseases and cumulative injuries. To trace that history, we return, once again, to *Fruehauf.*

*Fruehauf* itself involved not an "occupational disease" but a latent injury from a series of traumas to the employee's back. (*Fruehauf, supra,* 68 Cal.2d at p. 571.) At the time, former section 5412, defining "date of injury" for purposes of the statute of limitations, referred only to "occupational diseases" and did not mention "cumulative injuries." (*Ibid.*) At issue in *Fruehauf* was whether the Legislature intended the "date of injury" for the employee's cumulative back injury to be determined in the same way as occupational diseases, under former section 5412, or as a single injury under section 5411. (*Ibid.*; see 2 Hanna, *op. cit. supra,* § 18.03[6], p. 18-20.) *Fruehauf* concluded that cumulative injuries should be classified as occupational diseases. (*Fruehauf, supra,* 68 Cal.2d at p. 576.)

Shortly after *Fruehauf,* however, the Legislature added section 3208.1 providing in pertinent part "that the date of cumulative injury shall be the date of disability caused thereby." (Stats. 1969, First Ex. Sess. 1968, ch. 4, § 1, p. 31; 2 Hanna, *op. cit. supra,* § 18.03[6], p. 18-21.) This definition differed from then-section 5412 in that the element of the employee's knowledge of causation by employment was omitted from former section 3208.1. (*Ibid.*)

In 1973, section 3208.1 was amended to *add* the "knowledge" element. It did this by deleting the words "of disability caused thereby" and by substituting "determined under Section 5412." (Stats. 1973, ch. 1024, § 1, p. 2032.) Section 5412, however, referred *only* to "occupational diseases," and not to cumulative injuries, so the same enactment amended section 5412 by adding the words "or cumulative injuries" following "occupational diseases." (Stats. 1973, ch. 1024, § 3, p. 2032.)

Thus, the purpose of the 1973 amendment to section 3208.1 was in effect to restore the rule of *Fruehauf,* to provide a uniform statute of limitations for cumulative injuries and occupational diseases.[19] We have already con-

---

[19]One commentator has suggested that the 1973 amendments to sections 3208.1 and 5412 brought the statutes into literal conformity with their interpretation in *Chavez* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 5 [106 Cal.Rptr. 853]. (Swezey, Cal. Workmen's Compensation Practice (Cont.Ed.Bar Supp. 1982) §§ 2.14-2.15, p. 16.) *Chavez* held that an employee who became disabled as a consequence of cumulative injury had to file his claim within a year of the time he knew or reasonably should have known his disability was caused by present or prior employment. (*Chavez, supra,* 31 Cal.App.3d at pp. 10-11.)

cluded that Butler's claim is not precluded by the statutes of limitations set forth in sections 5405 and 5412; accordingly, nothing in section 3208.1 detracts from that conclusion.

■ Any doubts as to our construction of the statutory scheme are dispelled by our plain statutory duty to construe the Act's provisions liberally with the purpose of extending their benefits for the protection of persons injured in the course of their employment. (§ 3202; see *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 241 [193 Cal.Rptr. 547, 666 P.2d 989]; *Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033]; 2 Witkin, *op. cit. supra,* § 6, pp. 855-856.) This duty of liberal construction extends to limitations provisions. (*Fruehauf, supra,* 68 Cal.2d at p. 577.) ■ We thus hold an employee may file a claim and receive an award of compensation for medical treatment for an occupational disease prior to the "date of injury," as defined in section 5412.[20]

D

Having concluded that an applicant is entitled to receive compensation in an occupational disease case for medical treatment rendered prior to the "date of injury," we note that an applicant is entitled to have an award amended if further treatment proves necessary. As we explained in part A, *ante,* a timely application for compensation renders the statutes of limitations, sections 5404-5412, inoperative as to future medical compensation claims, which are then governed by sections 5803-5805. Under sections 5803-5805 an applicant suffering from asbestosis who has received a pre-"date of injury" award for medical treatment may have the award amended to include future similar expenses as they arise, up until five years following the "date of injury." (§§ 5412, 5804; 1 Hanna, *op. cit. supra,* § 9.02[2][b],

---

[20]*Argonaut Mining Co.* v. *Ind. Acc. Com.* (1951) 104 Cal.App.2d 27 [230 P.2d 637], followed in *Dickow* v. *Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 762 [109 Cal.Rptr. 317], does not alter our conclusion. In *Argonaut,* the court faced the issue of whether disability compensation in occupational disease cases should be measured by the rates in effect at the date of injury (§ 5412) or at the last date of injurious exposure, often many years previously. The court concluded, quite properly, that the rate should be that in effect at the date of injury. The court reasoned that "When the right [to disability compensation] comes into existence certain rates are applicable. It would seem that these are the rates by which compensation should be payable." (*Argonaut, supra,* at p. 31.) In reaching its conclusion, however, the court made a sweeping assumption that "all other incidents of the workman's right" also arise only with the onset of disability. (*Ibid.*) This assumption was obviously dicta, and it is without logical foundation. While the right to *disability* compensation should arise only with the onset of disability, it does not follow that all other incidents of full compensation should also arise precisely at that time. Rather, the right to medical treatment should arise with its medical necessity, just as disability indemnity arises with its own necessity. Confined to its holding, then, *Argonaut* does not cast doubt upon our conclusion in this case.

p. 9-13; cf. *Piedemonte, supra,* 46 Cal.Comp.Cases at p. 483.) In practice, as was done in this case, the problem is handled much more simply without any amendments if the initial award for medical expenses is framed in the language of section 4600, for "Medical . . . treatment . . . which is reasonably required to cure or relieve from the effects of the injury . . . ." (Cf. *Piedemonte, supra,* at p. 483; see fn. 7, *ante.*)

Similarly, an applicant who has received a pre-"date of injury" award for medical treatment and subsequently becomes disabled is entitled to seek compensation within five years of "date of injury" "upon the ground that the original injury has caused new . . . disability . . . ." (§ 5410; see *Standard Rectifier Corp. v. Workmen's Comp. App. Bd., supra,* 65 Cal.2d at p. 291; *Smith v. Johns-Manville Products Corp., supra,* 46 Cal.Comp.Cases 557; 1 Hanna, *op. cit. supra,* § 9.03, p. 9-21.)

## II

■ We next turn to petitioners' contention that the board acted beyond or in excess of its powers by "deferring" a finding of permanent disability. Petitioners claim that "Respondent, [board], should have found that *there was no permanent disability* . . . ." (Italics added.)

This issue arose in *Piedemonte, supra,* 46 Cal.Comp. Cases 475, where the WCJ had made a finding that the applicant suffered "no permanent disability." (P. 475.) On appeal to the board the applicant argued that "the finding of no permanent disability may forever bar him from claiming workers' compensation benefits if his condition manifests disability only after the period to reopen [§§ 5410, 5804] has expired." (*Ibid.*) Responding to the applicant's concerns, the board deleted the WCJ's finding of "no permanent disability" and substituted a finding that "Applicant's condition is not yet permanent and stationary." (P. 483.) The board reasoned that with this change, they would not be "deciding" the permanent disability issue at that point, but would merely be "deferring" it until the disability manifested itself. (Pp. 482-483.)[21]

In parts I-A and I-D, *ante,* we noted the five-year period of sections 5410 and 5804 *only begins to run* as of a "date of injury," i.e., when disability manifests itself and industrial causation is or should be known (§ 5412). In light of that discussion, *Piedemonte's* device of "deferring" the disability

---

[21]Avoiding a "decision" on the disability issue was thought to be important because without a "decision," the board noted, "The five-year period of Labor Code § 5804 will not preclude determination of the issue at [the time disability manifests itself] *because there is no decision to be altered or amended.*" (*Piedemonte, supra,* 46 Cal.Comp.Cases at pp. 482-483, italics added.)

issue is unnecessary. Under section 5412's definition of "date of injury" it is impossible for the applicant's disabling condition to manifest itself "only after the period to reopen has expired" (*Piedemonte, supra,* at p. 475), because that manifestation is one of the two triggering events marking the beginning, not the end, of the five-year statutory period.

Indeed, in *Smith* v. *Johns-Manville Products Corp., supra,* 46 Cal.Comp.Cases 557, decided one month after *Piedemonte,* the board addressed what it termed an applicant's "novel contention" that his petition to reopen was not barred by the statute of limitations because it was filed within five years after he became disabled. After reconsidering the issue, the board concluded, evidently for the first time, that "the worker has five years from the concurrence of the date of first compensable disability as a result of an occupational disease and knowledge thereof to file a petition to reopen pursuant to Labor Code sections 5803 and 5804 . . . ." (P. 557.) In light of *Smith, Piedemonte*'s concern with avoiding a finding of "no permanent disability" no longer seems appropriate. Indeed, a finding of "no disability," as was made in this case, makes it clear that no "date of injury" has occurred so that the five-year period within which the board can award compensation has not begun to run.

Accordingly, we perceive neither good reason nor statutory authority for the board formally to "defer" the disability issue in asbestosis cases. Rather, the issue should be addressed when it is tendered, and if no disability is present, an appropriate finding of fact should be made. An applicant remains free, of course, to tender the issue of disability anew within the statutory period of section 5410 once disability appears.

As we noted, in this case the WCJ found that the applicant's asbestosis "has not yet caused either compensable temporary disability or permanent disability." Petitioners do not explain how the WCJ's finding differs materially from a finding, in so many words, of "no disability." The WCJ's finding correctly reflected the state of the evidence before it, and it will not be disturbed.

### III

Petitioners finally contend that the WCJ's decision is not supported by substantial evidence. Petitioners' only argument is directed to the lack of evidence supporting a "deferral" of a finding of disability, as discussed in part II, *ante.* Petitioners have not challenged the sufficiency of the evidence supporting the WCJ's findings of fact numbers 6 and 7, that further medical treatment will be required and that the applicant has incurred expenses for self-procured medical treatment. As we explained in part I, *ante,* statutory

entitlement to medical treatment is not conditioned upon a determination that the employee was disabled, but only upon a determination that the injury arose out of and within the scope of the employment. An award of medical treatment compensation prior to the "date of injury" is not precluded by the statutes of limitations. (§§ 5404, 5405, 5412.) Findings of fact numbers 6 and 7 are supported by the record, and they in turn support the board's award. The findings and award will not be disturbed.

### DISPOSITION

The board's decision and award are affirmed.

Regan, Acting P. J., and Sparks, J., concurred.

The application of petitioner Insurance Company of North America for a hearing by the Supreme Court was denied June 13, 1984.