[No. A047411. First Dist., Div. Five. Apr. 27, 1990.]

CHEVRON U.S.A., INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, LUCILLE
STEELE et al., Respondents.

**COUNSEL**

Harbinson, Carlson & Tune, Thomas J. Harbinson, Mark H. Tune and LiAnn Yamashiro for Petitioner

William B. Donohoe, Kazan & McClain and Victoria Edises for Respondents.

**OPINION**

**KING, J.**—In this case we hold that where two separate and distinct occupational disease processes resulting from a single period of exposure to asbestos manifest themselves at different times, each is entitled to a different date of injury, consistent with Labor Code[1] section 5412, for purposes of calculating the applicable rate of statutory death benefits payable under section 4702.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Petitioner Chevron U.S.A., Inc. (hereafter Chevron), seeks review of an order, denying reconsideration, from the Workers' Compensation Appeals Board (hereafter Board) which adopted the report of the workers' compensation judge (hereafter WCJ), holding (1) that the death of Harvey Steele (hereafter Steele) was the result of mesothelioma, a separate and distinct pathology from asbestosis, and (2) that Steele first manifested disability on August 12, 1987, the proper date of injury for purposes of calculating the statutory death benefit. Because the mesothelioma resulted from the same period of exposure to asbestos which previously caused Steele to suffer from asbestosis, Chevron contends that the same date of injury, September 28, 1976, should apply for purposes of calculating the death benefit.

Lucille Steele, Kerry Haggett, and Eric Haggett (hereafter respondents) answer that August 12, 1987, is the proper date of injury under section 5412 because Steele's mesothelioma first manifested disability on that date, and it is a disease distinct from asbestosis.

For the reasons discussed below, we agree with respondents and affirm the Board's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

There is no dispute as to material facts. Steele worked as an insulator for Chevron and was exposed to asbestos for the period of 1951 to September 15, 1975. In 1976 Steele was diagnosed with asbestosis[2] and filed a claim for workers' compensation benefits.

In 1977 Steele retired because of shortness of breath and heart disease. On November 24, 1981, the Board found that Steele, as a result of occupational exposure to asbestos from 1951 to September 15, 1975, sustained an industrial injury on September 28, 1976, to his lungs, resulting in asbestosis, and awarded a permanent disability of 63 percent.

 On August 12, 1987, while hospitalized for a urinary problem, Steele was first diagnosed with mesothelioma, also resulting from the earlier occupational exposure to asbestos.[3] On November 13, 1987, Steele died as a result of the mesothelioma.

---

[2] Steele was diagnosed with parenchymal asbestosis—a scarring of the lung tissue—due to asbestos inhalation.

[3] Mesothelioma is recognized in the medical community as an asbestos-related disease. Specifically, malignant mesothelioma is a disease of the mesothelial surface (chest and stomach) lining consisting of a neoplastic process of the pleura due to asbestos inhalation. Decedent

On December 2, 1987, Steele's widow, Lucille Steele, filed a claim for death benefits, alleging that the mesothelioma was the result of the occupational asbestos exposure. On May 23, 1989, Steele's minor children, Eric and Kerry Haggett, were joined as parties.

The matter proceeded to hearing before the Board regarding the sole issue of the proper date of injury for the purpose of calculating the compensation rate of the death benefit.

On June 7, 1989, the WCJ issued his decision, finding that August 12, 1987, was the date of injury because on that date Steele first manifested disability as a result of the mesothelioma.

On June 30, 1989, Chevron sought reconsideration, arguing that the date of injury for the mesothelioma should be September 28, 1976, the date on which Steele earlier was found to have first suffered compensable disability from asbestosis.

In his report and recommendation on petition for reconsideration (hereafter WCJ report), the WCJ recommended that the Board deny Chevron's petition, opining that Chevron confused the fact of exposure to asbestos with the fact of injury or pathology resulting from said exposure. The WCJ stated, as pertinent: "[I]n Mr. Steele's case, he was exposed to asbestos while working for the defendant herein and that exposure resulted in two separate and distinct injuries. The first injury was that of asbestosis and the second injury was the mesothelioma of the lining of the stomach. Thus, with separate and distinct diseases with different dates of disability, we must have different dates of injury."

On August 21, 1989, the Board, adopting and incorporating the WCJ report, denied reconsideration.

## DISCUSSION

*Date of Injury*

Under the Workers' Compensation Act, "injury" is broadly defined to include both injuries and diseases that arise out of the employment. (§ 3208.)

---

was diagnosed with peritoneal mesothelioma which is by definition a cancer of the peritoneum, the lining of the abdominal cavity.

Section 5411 provides: "The date of injury, *except in cases of occupational disease* or cumulative injury, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed." (Italics added.) The date of injury for an occupational disease is determined under section 5412, which provides: "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."[4]

In *Argonaut Mining Co. v. Ind. Acc. Com.* (1951) 104 Cal.App.2d 27 [230 P.2d 637], the court held that in addition to identifying the date of injury for purposes of the operation of the statute of limitations, section 5412 "also sets the date for the measurement of compensation payable, and all other incidents of the [worker's] right. Until the disability there is no compensable injury. When the disease results in disability there then comes into existence for the first time a right in the [injured worker] to seek compensation. When the right comes into existence certain rates are applicable. It would seem that these are the rates by which compensation should be payable." (*Id.* at p. 31.)

In *Dickow v. Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 762 [109 Cal.Rptr. 317], this district, following *Argonaut Mining v. Ind. Acc. Com., supra*, 104 Cal.App.2d 27, annulled the Board decision which had held in an occupational disease case that the injured employee was entitled to benefits at the rates in effect at the time of exposure (1954) to the injurious substance, rather than at the time of injury (1960) as defined under section 5412. The injured employee's lung disability did not manifest itself until 1960, reasoned the court, and had the employee filed a claim in 1954, he would not have been awarded any benefits because he was not disabled at that time. (*Id.* at p. 764.)

Following *Dickow*, this district again had opportunity to address the issue of computing earnings for purposes of determining disability indemnity in an occupational disease case. In *Van Voorhis v. Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 81 [112 Cal.Rptr. 208], the court held that "the compensation must be measured by the applicant's earning capacity as it

---

[4]This is a codification of the rule judicially announced by the Supreme Court in *Marsh v. Industrial Acc. Com.* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563]. *Marsh* determined that in the event of a latent and progressive disease, it cannot reasonably be said that the injury dates from the last date of exposure, but rather the injury dates from the time when the accumulated effects of the disease culminate in a disability traceable to the latent disease as the primary cause, and it is or should be apparent by the exercise of reasonable care and diligence that the employment was the cause of the disability. (*Id.* at p. 351.)

existed at the time he incurred his compensable disability [citation]." (*Id.* at p. 87.)

■ After review of the above discussed authorities, it is irrefutable that the "date of injury" for determining the relevant statute of limitations, as well as the statutory rate of indemnity benefits, in latent occupational disease cases, is the date of concurrence of disability and knowledge. ■ Thus, we are left to determine whether one period of exposure to a harmful substance, such as asbestos, can result in more than one "injury" or "disease" and, therefore, more than one date of injury under section 5412.

The law is express that there can be no compensable injury until there is disability. (§ 5412; *Argonaut Mining Co.* v. *Ind. Acc. Com.*, *supra*, 104 Cal.App.2d at p. 31.) The fact of injury (exposure) and the date of injury (disability), by definition, are not equivalent in cases involving the latent effects of an occupational disease. (See §§ 5411, 5412; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Comp. (2d rev. ed. 1990) § 18.03[6], pp. 18-21; cf. *J.T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 343-344 [200 Cal.Rptr. 219].)

It necessarily follows from this reasoning that the fact of injury, i.e., exposure, under certain situations may result in more than one date of injury. For example, in the instant case, Dr. Piero Mustacchi, an occupational epidemiologist, identified *four different disease processes* that have been linked to asbestos exposure: asbestosis, pleural plaques, diaphragmatic calcifications, and malignant mesothelioma. It is not disputed that the mesothelioma was first diagnosed and first manifested disabling symptoms on August 12, 1987. Dr. John R. Balmes, an internal and pulmonary medicine specialist, testified that an individual could have asbestosis without mesothelioma, or also could have mesothelioma without asbestosis. Dr. Balmes further testified that while malignant mesothelioma and asbestosis are often seen together, particularly in individuals with greater asbestos exposure, they are in fact separate and distinct pathological disease processes.

Steele's mesothelioma was not an extension or outgrowth of his earlier pulmonary asbestosis. By statutory definition, decedent's "date of injury" with regard to the mesothelioma could not have occurred until he "first suffered disability therefrom" (§ 5412), which did not occur until August 12, 1987.

Chevron argues, however, that *General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331 [228 Cal.Rptr. 243, 721 P.2d 124],

directs that we determine otherwise in the matter before us. Chevron refers specifically to a discussion in *General Foundry* regarding the difficulties in rating the permanent disability of a presently nondisabling asbestosis. As pertinent, the Supreme Court stated: "Both parties agree that it would be unworkable to factor into this rating the unknown future progress of an occupational disease, including such speculative factors as whether lung cancer or mesothelioma might develop." (*Id.* at p. 336.) This language, contends Chevron, obliges this court to find that Steele's mesothelioma progressed directly from his earlier asbestos-related lung disease, and that only one date of injury exists herein.

We disagree. We are not bound by Supreme Court dictum that we do not find compelling. (9 Witkin, Cal. Procedure (3d ed. 1983) Appeal, § 785, p. 756; see *Bekins Moving & Storage Co.* v. *Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 252 [221 Cal.Rptr. 738]; *United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 835 [209 Cal.Rptr. 16].)

Furthermore, in *General Foundry,* the Supreme Court did not go on to explain whether it was of the opinion that either mesothelioma or lung cancer was one of the progressive consequences suffered by the applicant as a result of his asbestosis. Moreover, the court implied that asbestos exposure does result in a number of different diseases, as exemplified by the following language from a footnote: "The widespread industrial exposure [to asbestos] has led to the recognition in the medical community of a number of asbestos-related diseases including parenchymal asbestosis, pleural asbestosis, pulmonary carcinoma and mesothelioma." (*General Foundry Service* v. *Workers' Comp. Appeals Bd., supra*, 42 Cal.3d at p. 336, fn. 2.) Clearly, *General Foundry* does not propose that a period of asbestos exposure results in one unbreakable continuum of diseases all emanating from the same date of injury, as Chevron suggests.

Chevron further argues that in cases involving progressive occupational diseases, *General Foundry* mandates that the Board award permanent disability and reserve jurisdiction to modify an award in the event that the disability increases in the future. Chevron, however, continues to confuse the fact of exposure with the fact of pathology or injury resulting from the exposure. This is exactly the confusion that the legislative enactment of section 5412 and the *Marsh* and *Argonaut Mining* line of decisions sought to rectify.

Notwithstanding the fact that *General Foundry* was decided after the first finding of injury and the permanent disability award of 63 percent herein,

an application of the *General Foundry* principles to this case would not result in a finding of one injury, as Chevron proposes. Assuming arguendo that the Board had reserved jurisdiction on the issue of permanent disability under the conditions discussed in *General Foundry*, said reservation would have allowed for the modification of the award of 63 percent only insomuch as the progressive lung disease or asbestosis resulted in a future increase in the permanent disability. (See *General Foundry Service* v. *Workers' Comp. Appeals Bd., supra*, 42 Cal.3d at pp. 337-338.)

Steele's peritoneal mesothelioma, however, did not progress from his asbestosis or lung disease. The medical testimony explicitly establishes that the mesothelioma was an entirely separate and distinct disease process resulting in an entirely separate and distinct injury and disability. By statutory mandate, the mesothelioma necessarily involves a different date of injury. (§ 5412.)

*Reasonable Basis for Petition*

Respondents request that we remand the matter for the purpose of making a supplemental award of attorney fees pursuant to section 5801.[5] It is our responsibility to make a separate ruling on this request. (*Employers Mut. Liab. Ins. Co.* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 104, 108 [120 Cal.Rptr. 48].)

The purpose of section 5801 is to shift the burden of attorney fees to the employer when the reviewing court finds no reasonable basis for the petition. (*Employers Mut. Liab. Ins. Co., supra*, 46 Cal.App.3d at p. 108.) When an employer or carrier raises an issue in the petition for writ of review which was not raised by petition for reconsideration before the Board, and thus, an issue which we may not consider, or contends that an award is not supported by substantial evidence, the reviewing court may find that there is no reasonable basis for the petition. (*Id.* at pp. 108-109.) Respondents contend that the basis for Chevron's argument is that the Board decision is not supported by substantial evidence. Therefore, conclude respondents, this court should find that there is no reasonable basis for Chevron's petition under section 5801. We disagree.

---

[5] As pertinent, section 5801 provides: "In the event the injured employee . . . prevails in any petition by the employer for a writ of review from an award of the appeals board and the reviewing court finds that there is no reasonable basis for the petition, it shall remand the cause to the appeals board for the purpose of making a supplemental award awarding to the injured employee or his attorney . . . a reasonable attorney's fee for services rendered in connection with the petition for writ of review. Any such fee shall be in addition to the amount of compensation otherwise recoverable and shall be paid as part of the award by the party liable to pay such award."

It is correct that the ultimate resolution of the issues herein necessarily requires that substantial evidence support the Board's determination that mesothelioma is a separate and distinct disease which did not progress from the asbestosis. However, Chevron does not argue solely the secondary issue of substantial evidence. Chevron raises a question of law heretofore unaddressed. The fact that we affirm the Board's decision does not mandate automatically a finding that the petition is without reasonable basis. The petition before us is not representative of the type of petition the Legislature sought to discourage when it enacted section 5801. It is not without a reasonable basis.

Respondents' request for supplemental attorney fees under section 5801 is denied.

In conclusion, we determine that the Board correctly found that the date of injury under section 5412 regarding Steele's mesothelioma was August 12, 1987. Accordingly, the Board order of August 21, 1987, denying reconsideration, is affirmed.

Low, P. J., and Haning, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 10, 1990.