[L. A. No. 29066. In Bank. Oct. 25, 1966.]

STANDARD RECTIFIER CORPORATION et al., Petitioners, v. WORKMEN'S COMPENSATION APPEALS BOARD and EDITH J. WHIDDON, Respondents.

288

Wallace, Brown & Crain and W. Gerald Brown for Petitioners.

Everett A. Corten, Edward A. Sarkisian, Romaine E. Harper and Ben W. Whitehead for Respondents.

BURKE, J.—Petitioners seek annulment of an award of workmen's compensation benefits for permanent disability issued in favor of respondent Edith J. Whiddon. We have concluded that the application for benefits was timely filed, that other contentions advanced by petitioners are also devoid of merit, and that the award should be affirmed.

Mrs. Whiddon, the employee, testified that her work required many repetitive motions of her arms, neck and shoulders, averaging 5,000 movements a day, five or six days a week. In April 1961 she first noticed aching in her arms, neck and head, and reported it to her supervisor, Ruth Kinney. About a month later she consulted her doctor and received ''a small'' treatment from him. In May and June 1961 she again complained to the supervisor about the aching and that it was the result of maladjustment of the machines and the lights with which she worked. She testified that on several different occasions she requested and received from the supervisor some gray pain pills which she took and which gave her some relief. The employee had heard from other employees that the pills were available, but did not know ''what kind of a pill that was.'' The supervisor was not a doctor or a nurse and none was on the premises. In May or June 1961 the supervisor advised the employee to consult the supervisor's personal doctor, and she did so and received one treatment from the doctor. The employee testified that the doctor ''knew [the supervisor] and he knew they'd sent me to him. . . . She sent me and I told him who sent me.'' The employee paid the doctor's bill herself.

In January 1962 the employee requested sick leave from the employer's superintendent, explaining that the movements of her neck required by the work were giving her severe pains through the neck, right arm and head. Leave was granted and she received six days' sick pay. Except for nine days in April, the employee did not return to work until the end of May

1962. Thereafter her complaints grew worse, her doctor told her "the job was aggravating my neck, I must quit," and on July 28, 1962, she terminated her employment. In December 1963 she underwent surgery to her neck.

Meanwhile, on August 19, 1963, the employee filed with the Industrial Accident Commission (predecessor of respondent board) her first application for benefits. This was concededly beyond the one-year limitation period specified in Labor Code[1] section 5405.[2] The commission found, however, that the employee had sustained a permanent industrial disability and that her application had been timely filed within the five-year period set forth in section 5410[3] for instituting proceedings upon the ground of new and further disability. ■ Permanent disability is a new and further disability within the meaning of that section. (*Gobel* v. *Industrial Acc. Com.* (1934) 1 Cal.2d 100, 102-103 [33 P.2d 413] ; *Henry Cowell L. & C. Co.* v. *Industrial Acc. Com.* (1930) 211 Cal. 154, 160-161 [294 P.703,72A.L.R.1118].)

■ The rule as established by the cases is that before an employee is entitled to the advantage of the five-year period for claiming benefits for new and further disability under section 5410, he must have been furnished workmen's compensation benefits by the employer either voluntarily or pursuant to a commission award. (*Westvaco etc. Corp.* v. *Industrial Acc. Com.* (1955) 136 Cal.App.2d 60, 67 [288 P.2d 300] ; *Pacific Indem. Co.* v. *Industrial Acc. Com. (Wimmer)* (1948) 85 Cal.App.2d 490, 494 [193 P.2d 117] ; *American Motorists Ins. Co.* v. *Industrial Acc. Com.* (1935) 9 Cal.App.2d 66, 68 [48 P.2d 721] ; *Kauffman* v. *Industrial Acc. Com.* (1918) 37 Cal.App. 500, 503 [174 P. 690] ; see also *Henry Cowell L. & C. Co.* v. *Industrial Acc. Com.* (1930) *supra,* 211 Cal. 154, 160-162 ; *Broadway-Locust Co.* v. *Industrial Acc. Com.* (1949) 92 Cal.App.2d 287, 290 [206 P.2d 856].) ■ The rationale of this rule is that the "new and further disability" to which

---

[1] Unless otherwise stated, all section references are to the Labor Code.

[2] Section 5405 in pertinent part: "The period within which may be commenced proceedings for the collection of . . . benefits . . . is one year from:

"(a) The date of injury; or

"(b) The expiration of any period covered by payment . . .; or

"(c) The date of last furnishing of any benefits. . . ."

[3] Section 5410 in pertinent part: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within *five years* after the date of the injury *upon the ground* that the original injury has caused *new and further* disability. . . ." (Italics added.)

section 5410 refers is a disability in addition to that for which the employer previously provided benefits as required by the statute. The furnishing of medical treatment for an industrial injury constitutes such a benefit. (§ 4600; *Pacific Indem. Co.* v. *Industrial Acc. Com. (Wimmer), supra,* p. 495.)

In the present case the commission held that the furnishing of the pain pills by the supervisor with knowledge that they were to alleviate a condition caused by work constituted the furnishing of medical treatment. We are persuaded that this view is sound and accords with the intent of the Legislature that provisions of the workmen's compensation act be liberally construed "with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202; see *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832] ; *L. B. Price Mercantile Co.* v. *Industrial Acc. Com.* (1957) 49 Cal.2d 13, 16 [313 P.2d 860].)

First aid rendered to an injured employee has been held to be medical treatment within the purview of the rules here involved. (See *Pacific Indem. Co.* v. *Industrial Acc. Com. (Wimmer)* (1948) *supra,* 85 Cal.App.2d 495-497; *Johnson Western Co.* v. *Industrial Acc. Com. (Cooper)* (1950) 15 Cal.Comp. Cases 104.) In *Wimmer* the first aid was administered by a nurse in a hospital maintained on the employer's premises, and in *Cooper* by a foreman who "used swabs from first aid kit to apply arnica to his face and . . . continued to put something on Cooper's face each day for the next four or five days." Petitioners urge that the pain pills here requested by the employee and furnished by her supervisors are more akin to the aspirin offered by a foreman and held not to constitute treatment sufficient to toll the limitations statute, in *Stevens* v. *Industrial Acc. Com.* (1963) 28 Cal.Comp. Cases 39. But in *Stevens* the employee replied in the negative to the foreman's inquiry whether he wished to go to a doctor, and whether the proffered aspirin was accepted does not appear; further, the employee after three or four weeks away from work returned and worked continuously for the employer for another 18 months, after which he resigned in order to move to another state. By contrast in the present case the employee on several occasions requested and received pain pills from her supervisor to relieve the pains caused by the conditions of her work, and also reported the situation to the superintendent from whom she requested sick leave. Under

such circumstances the commission was warranted in concluding that medical treatment had been furnished.

 There is no merit in petitioners' suggestion that the award here involved was gained by fraud because the employee failed to mention a pending superior court action when asked whether she had ever had "any other accidents at any time other than falling off of the stool?" Suffice it to say that the superior court action had been brought against other parties, and the trial referee and the commission were aware of the matter before the present award was made. A medical report of April 13, 1962, introduced into evidence at a hearing on October 29, 1963, expressly refers to the court action, as does a referee's report dictated in June 1964. Petitioners' argument that the complaint in that action constituted newly discovered evidence for which they should have been granted reconsideration after the award herein issued on August 27, 1965, is thus equally lacking in persuasiveness. (See § 5903, subd. (d).)

 There is likewise no merit in petitioners' final contention that the evidence is insufficient to support the finding of the commission that the employee's disability was industrially caused. At least two medical reports expressed the opinion that her condition resulted from the repetitive movements incident to her work. Other evidence cited by petitioners does no more than to create a possible conflict. The opinion of only one physician though inconsistent with other medical opinions in the record is substantial evidence and may be adopted by the commission. (See *Allied Comp. Ins. Co.* v. *Industrial Acc. Com.* (1961) 57 Cal.2d 115, 122 [14] [17 Cal.Rptr. 817, 367 P.2d 409].)

The award is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.