[L.A. No. 29784. In Bank. Oct. 20, 1970.]

NAOMI MAXINE BLAKELEY, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
LAURA SCUDDER, DIVISION OF PET MILK et al., Respondents.

**COUNSEL**

Wagner & Scuderi and Robert S. Scuderi for Petitioner.

Rupert A. Pedrin, Sheldon M. Ziff, Gabriel L. Sipos, Lionel K. Hvolboll, Kendig, Stockwell, Gleason & Allen and Ward A. Morris for Respondents.

**OPINION**

**BURKE, J.**—Petitioner seeks review of the appeals board's opinion and order denying reconsideration of the referee's findings and award which disallowed petitioner's claim for compensation benefits for permanent disability. We have concluded that petitioner's application for benefits was timely filed and that the board's decision should be annulled.

Petitioner testified that on June 5, 1967, she was employed as a potato chip packer, and that on that date she slipped and fell during the course of her employment, injuring her knees, elbow, pelvis and rib cage. She further testified that the following day she showed her injuries to the company nurse, who examined her and told her to take some aspirin, but who

did not advise her to see a doctor; that petitioner, having already taken some aspirin at her home, declined the offer of aspirin, telling the nurse that she could obtain more aspirin from the "chip room" cupboard if she needed them; that the nurse told petitioner to take the aspirin that was so provided; and that subsequently petitioner did take some aspirin from the cupboard. Petitioner completed an accident report the day following her fall, and she continued to see the nurse for three or four days thereafter, but her condition did not improve. She continued working until November 14, 1968, and filed her claim for compensation benefits on April 7, 1969, 22 months after the date of her injury.

The referee and board denied petitioner's claim solely on the basis that it was barred by the one-year limitations period under Labor Code section 5405,[1] and held that the mere furnishing of aspirin to petitioner did not constitute medical treatment which would have entitled her, under section 5410,[2] to a five-year period for claiming benefits for new and further disability.

The rule as established by the cases is that before an employee is entitled to the advantage of the five-year period under section 5410, he must have been furnished workmen's compensation benefits by the employer either voluntarily or pursuant to a commission award. (*Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 287, 290 [54 Cal.Rptr. 100, 419 P.2d 164].) The rationale of this rule is that the "new and further disability" to which section 5410 refers is a disability in addition to that for which the employer previously provided benefits as required by the statute. The furnishing of medical treatment for an industrial injury constitutes such a benefit. (*Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd., supra,* pp. 290-291.)

In *Standard Rectifier,* we held that the furnishing of "gray pain pills" by the employee's supervisor, with knowledge that they were to alleviate a condition caused by work, constituted the furnishing of medical treatment. We stated further that "We are persuaded that this view is sound and accords with the intent of the Legislature that provisions of the workmen's compensation act be liberally construed 'with the purpose of extending their bene-

---

[1]Section 5405 in pertinent part provides: "The period within which may be commenced proceedings for the collection of . . . benefits . . . is one year from:
"(a) The date of injury; or
"(b) The expiration of any period covered by payment . . . ; or
"(c) The date of last furnishing of any benefits . . . ."

[2]Section 5410 in pertinent part provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability. . . ."

fits for the protection of persons injured in the course of their employment.' (§ 3202 . . . .)" (65 Cal.2d at p. 291.)

Respondents rely upon *Stevens* v. *Industrial Acc. Com.* (1963) 28 Cal. Comp. Cases 39, wherein the mere offer of aspirin to the employee by a foreman was held not to constitute the furnishing of medical treatment. In *Standard Rectifier,* we distinguished *Stevens,* stating that "But in *Stevens* the employee replied in the negative to the foreman's inquiry whether he wished to go to a doctor, and whether the proffered aspirin was accepted does not appear . . . ." (65 Cal.2d at p. 291.)

In the instant case, petitioner was not offered the services of a doctor; instead, the nurse recommended that petitioner take aspirin for her injury, and she followed that advice and subsequently took the aspirin furnished by her employer. That the source of the aspirin was a cupboard accessible to all employees rather than the nurse's own cabinet is irrelevant, for aspirin was the form of medical treatment prescribed to petitioner and followed by her. Nor do we think that a meaningful distinction can be made between the "gray pain pills" furnished in the *Standard Rectifier* case and the aspirin furnished herein. Aspirin, being a known analgesic,[3] is in fact a "pain pill," and to sanction any distinction between the two types of pills would exalt form over substance, contrary to the statutory injunction of liberal construction set forth above.

The decision of the appeals board is annulled and the case remanded for further proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[3]See Blakiston's New Gould Medical Dictionary (1949), page 101 ("aspirin"), page 11 ("acetylsalicylic acid").