[No. F009244. Fifth Dist. Sept. 30, 1988.]

WILLIAM A. SIDDERS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, EMPLOYEE
BENEFITS INSURANCE COMPANY et al., Respondents.

COUNSEL

Goldberg, Fisher & Quirk and Arthur F. Fisher for Petitioner.

Mullen & Filippi, Gay Lynne Natho, Mathews, McClain & Kraus, Michael J. McClain, Richard W. Younkin, William B. Donohoe and Charles E. Finster for Respondents.

OPINION

MARTIN, Acting P. J.—The applicant and petitioner, William A. Sidders, M.D., born January 31, 1920, sustained two specific injuries to his back while employed as a physician and surgeon by Drs. Moore, Newman and Sidders. The first occurred on March 25, 1981, when Industrial Indemnity Company provided insurance coverage (case No. 86 BAK 36748) and the second on February 17, 1983, when Employee Benefits Insurance Company provided coverage (case No. 86 BAK 36509).

Petitioner testified that after the initial injury he was hospitalized for four to five days but returned to work about four to six weeks after the injury. He continued to experience some backache and right leg pain. After the second injury in February of 1983, petitioner experienced periods of pain and numbness in his right leg and backaches. He has difficulty walking up steep grades and cannot run or jog. When the back pain became excessive, petitioner would lie on the floor with his feet propped up on an ottoman. He also took medication twice a day.

An application for workers' compensation benefits was filed on July 9, 1986, more than five years and three months after the March 25, 1981, injury.

A hearing was held before the Honorable Bruce M. Lang, workers' compensation judge, on February 6, 1987. A series of letters were filed after the hearing in which further arguments were made on the issues of apportionment and the statute of limitations.

The workers' compensation judge submitted the case for a recommended permanent disability rating by the disability evaluator and stated, among other instructions, "consider that applicant had a prior back disability which precluded stooping and lifting."

Upon receiving such instruction the disability evaluator determined that the prior injury should be given a permanent disability rating of 50 percent

and the second injury a permanent disability of 29.2 percent and then proceeded to subtract the disability attributed to the prior injury from the present disability, leaving a zero balance.

The workers' compensation judge determined that the application for benefits based on the occurrence of an injury on March 25, 1981, was barred by the statute of limitations. The workers' compensation judge determined that the second injury resulted in a 29½ percent permanent disability. The applicant's preexisting back disability, which precluded stooping and lifting, was taken into consideration and, after apportionment for the preexisting restriction, the workers' compensation judge determined that the second injury had not resulted in any compensable permanent disability. However, an award was made in favor of petitioner against Employee Benefits Insurance Company for further medical care and treatment as required to relieve or cure the applicant from the effects of the second injury.

The workers' compensation judge's opinion on decision included the following language: "In a series of letters after the hearing, applicant claims the Statute of Limitations was tolled by defendants' failure to comply with the Administrative Director's Rules which require defendant to serve injured employees with notice of their rights in the workers' compensation system and the time limits for filing an application. In the letters, applicant cites several cases in support of this claim. In all the cases cited, there was *evidence* of the employer or carrier's failure to comply with the Administrative Director's Rules, coupled with *evidence* that within the Statute of Limitations the employee either did not learn of the connection between his injury and his employment or did not learn of his right to file an application for benefits. In the present case, no *evidence* was presented at the trial to establish any of these three points. The assertions made by applicant's attorney by letter after the hearing do not constitute evidence."

On July 19, 1987, petitioner filed a petition for reconsideration with the Workers' Compensation Appeals Board.

An answer to the petition for reconsideration was filed on July 29, 1987, by Employee Benefits Insurance Company.

On July 30, 1987, the workers' compensation judge recommended the petition for reconsideration be denied.

Since the workers' compensation judge determined that the one-year statute of limitations had run on the first injury, the board concluded that no award of permanent disability could be allowed for either of the two

industrial injuries and an order to this effect was entered in each of the consolidated cases.

The Workers' Compensation Appeals Board issued an order denying reconsideration on August 12, 1987. The board denied reconsideration for the reasons stated in the report of the workers' compensation judge on the petition for reconsideration which the board adopted and incorporated into its order. The board also observed "that the applicant here is one of the owners of a small medical corporation. In essence, therefore, he is arguing that the statute of limitations should be tolled by his failure to give notice to himself. We do not believe that the statute of limitations should be tolled under such circumstances."

A petition for writ of review was filed in this case on September 21, 1987. An answer to the petition for writ of review was filed by Employee Benefits Insurance Company on October 8, 1987, and by Industrial Indemnity Company on November 6, 1987.

This court requested supplemental letter briefing on the issues as to whether the petitioner's status as both an employee and a partner or corporate owner results in an inference or imputation of knowledge of petitioner's right to benefits referred to in Labor Code section 5402[1] or otherwise renders inappropriate application of a tolling or estoppel doctrine based on asserted noncompliance with the employer's notification duty imposed by said section.

This court issued a writ of review and set the matter for an order to show cause hearing on May 16, 1988.

DISCUSSION

I. STATUTE OF LIMITATIONS

The affirmative defense of the statute of limitations was raised in an amended answer filed by Industrial Indemnity Company. In evidence at the hearing was the date of the initial injury, March 25, 1981, and the date of application or adjudication of a claim to workers' compensation benefits based on that injury, i.e., July 9, 1986. The question regarding a tolling of the statute of limitations was not raised or presented during the hearing. As was stated previously, the workers' compensation judge determined that due to a failure of proof on the issue of estoppel or tolling, the statute of limitations had run. This determination was adopted by the board. This

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

order effectively placed the burden of proof as to the issue of the tolling of the statute of limitations on petitioner. As will be explained, this was an error of law.

The opinion or decision with regard to case No. 86 BAK 36748, the initial injury, found that the filing of the application was barred by the statute of limitations in that the application was filed July 9, 1986, more than one year after the date of injury and more than five years within which an injured employee may claim new or further disability.[2]

The application filed by petitioner on July 9, 1986, was a claim for all workers' compensation benefits resulting from an injury that occurred on March 25, 1981. Medical benefits were paid by Industrial Indemnity through June 30, 1981. The statutory period for claiming further workers' compensation benefits under section 5405 would have terminated on July 1, 1982. If the application were interpreted only as a request for new and further disability, respondent Industrial Indemnity Company contends section 5410 would bar the claim. Respondent further argues that in raising the issue and asserting it at the hearing they made a prima facie showing that the statute of limitations had run.

In explaining his decision, the workers' compensation judge made reference to letters submitted by petitioner's counsel wherein petitioner cited several cases in support of his claim. The judge felt that these cases were inapposite in that each contained evidence of the employer or carriers' failure to comply with the administrative director's rule requiring an employer to notify an employee of his right to claim benefits. Furthermore, those cases contained evidence that the employee did not learn of his right to claim workers' compensation benefits for various periods of time which tolled the running of the statute. The opinion goes on to state that in the present case "no *evidence* was presented at the trial to establish any of these three points and that the assertions made by the applicant's attorney by letter after the hearing do not constitute evidence."

Section 5405 specifies in relevant part that workers' compensation proceedings must be commenced within one year from the date of injury or the date of last furnishing of any benefits. (See fn. 2, *ante.*)

---

[2] Section 5405 provides in pertinent part as follows: "The period within which may be commenced proceedings for the collection of the benefits . . . is one year from: [¶] (a) The date of injury; or . . . [¶] (c) The date of last furnishing of any benefits provided for in Article 2 of Chapter 2 of Part 2 of this division."

Section 5410 provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability or the need for vocational rehabilitation benefits. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction at all times within this period. This section does not extend the limitation provided in Section 5407."

■ The purpose of a statute of limitations for filing of claims in workers' compensation cases is to cause an early submission of controversies while it is possible to obtain competent evidence concerning the alleged injury and its effects, and thus to afford protection against false claims or those based upon remote and unsatisfactory speculation as to the cause of a disability manifesting itself long after the accident. (2 Hanna, Cal. Law of Employee Injury and Workmen's Compensation (2d ed. 1988) § 18.02[1].)

Because no evidence was presented on the issue of tolling or estoppel, we must determine who bore that burden to affirmatively assert and prove whether or not a tolling occurred.

In *Reynolds* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 726 [117 Cal.Rptr. 79, 527 P.2d 631], the employee had a heart attack at work on February 20, 1968, and his supervisor called an ambulance. Because of the heart attack, the employee did not work for one year; he paid all his own medical expenses. In December 1970, a relative suggested to the employee that he might have a workers' compensation claim, a possibility that he had not considered previously. He consulted an attorney and filed a claim on January 22, 1971, almost three years after the date of injury. Our Supreme Court held that the claim was not barred by section 5405's one-year limitations period because the employer never notified the employee of his workers' compensation rights.[3] Our Supreme Court observed that, under section 138.4, " '[t]he administrative director [of the Division of Industrial Accidents, Department of Industrial Relations] shall, with respect to injuries involving loss of time: [¶] (a) Prescribe reasonable rules and regulations for the serving on the employee of reports dealing with the payment or nonpayment of benefits. . . .' " (12 Cal.3d at p. 729.) Pursuant to section 138.4, the administrative director promulgated rules effective at the time of the employee's injury in *Reynolds,* requiring an employer to notify employees of the possibility of entitlement to workers' compensation benefits when an employee's injuries resulted in hospitalization or loss of more than seven days of work. (Cal. Code Regs., tit. 8, §§ 9816, 9817, 9859.)[4] As was stated in *Reynolds,* "[t]he clear purpose of these rules is to protect and preserve the rights of an injured employee who may be ignorant of the procedures or, indeed, the very existence of the workmen's compensation law." (12 Cal.3d at p. 729.) ■ *Reynolds* stands for the proposition that when an employer fails to perform its statutory duty to notify an injured employee of his workers' compensation rights, and the injured employee is unaware of those rights from the date of injury through the date of the employer's breach,

[3] The employer had knowledge as of the date of injury through the employee's supervisor pursuant to section 5402. The employee was unaware of those rights at the time of his injury.

[4] See current California Code of Regulations, title 8, sections 9812 and 9880 which provide the same notice requirements.

then the statute of limitations will be tolled until the employee receives actual knowledge that he may be entitled to benefits under the workers' compensation system.

Following the *Reynolds* decision, the Legislature in 1975 added new section 138.3, and amended section 5402. Section 138.3 states: "The administrative director shall, with respect to all injuries, prescribe . . . reasonable rules and regulations requiring the employer to serve notice on the injured employee that he may be entitled to benefits under this division." The 1975 amendment to section 5402 added the following relevant language: "Upon receiving . . . knowledge [of an injury], the employer shall notify the injured employee . . . that he may be entitled to benefits under this division. Such notice by the employer shall be within the time period and in the manner prescribed by the administrative director for such purpose . . . ."

In 1977, pursuant to the 1975 legislation, the administrative director added a rule requiring employers, within five days of receiving notice of any employee's work-related injury, to notify the employee in writing of his workers' compensation rights. (Cal. Code Regs., tit. 8, § 9880.) The duty of the employer to inform the injured employee of his workers' compensation rights arises when the employer has actual or constructive knowledge of any work-related injury. (§ 5402.)

This history was discussed at length in *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Martin*) (1985) 39 Cal.3d 57 [216 Cal.Rptr. 115, 702 P.2d 197]. In *Kaiser* (*Martin*) the court sought to determine the legislative intent in the light of both the *Reynolds* decision, which generated the legislative changes, and the policy of protecting those unaware of their rights, inherent in any notification statute. (*Id.* at p. 64.) The court concluded that the remedy for breach of an employer's duty to notify is a tolling of the statute of limitations if the employee, without that tolling, is prejudiced by that breach.

"An employee would be prejudiced without the tolling if he has no knowledge that his injury might be covered by workers' compensation before he receives notice from the employer. Requiring prejudice to toll the limitations period promotes the policy behind the notification statutes: to protect those unaware of their rights. If between the date of injury and the date the employer breaches, an employee gains the requisite actual knowledge of his workers' compensation rights, he will not be prejudiced by failure of his employer to notify him of those rights, and there is no reason to toll the statute of limitations even if his employer never advises him of his workers' compensation rights. If the employee remains ignorant of his rights past the time the employer breaches its duty to notify, the employee

will be prejudiced from the date of breach until the employee gains actual knowledge that he may be entitled to benefits under the workers' compensation system. By promoting the purpose of the notice statute in this manner, we accord weight to the Legislature's choice following *Reynolds* to modify the Labor Code's notice requirements rather than to alter the statute of limitations.

"In selecting this approach, we have rejected an ironclad rule that would start the statute of limitations running only upon receipt of the statutorily required notice from the employer; such an inflexible rule would be inconsistent with the policies underlying statutes of limitations. Such statutes are intended to afford 'finality and predictability in legal affairs, and [to ensure] that claims will be resolved while the evidence bearing on the issues is reasonably available and fresh.' (*Kaiser [Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Webb*) (1977) 19 Cal.3d 329 [137 Cal.Rptr. 878, 562 P.2d 1037],] 336.) The related notice statutes (§§ 138.3, 138.4, 5402) demonstrate a legislative decision that the policies underlying the statute of limitations are outweighed when an employer with knowledge of an injury breaches its duty to advise, and the employee is unaware of workers' compensation. Once a breaching employer notifies an injured employee of his workers' compensation rights, the policies behind the statute of limitations take precedence, and the tolling of the limitations period ends no later than the date notice is received. The tolling period ends earlier only if the employer proves that the employee gained the requisite knowledge of his workers' compensation rights before he receives the employer's notice. Similarly, if an employee is already aware of his rights when the injury is discovered, the limitations period is not tolled." (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Martin*), *supra,* 39 Cal.3d 57, 64-65.)

While the Supreme Court discusses the issue in terms requiring tolling only where an employer's breach of the notice requirements prejudices an employee, the court clearly states that the employer has the burden to prove either written notice was sent or that the employee had actual knowledge of his workers' compensation rights. (39 Cal.3d at pp. 60, 65.) The tolling period ends prior to the date notice is received "*only* if the employer *proves* that the employee gained the requisite knowledge of his workers' compensation rights before he receives the employer's notice." (*Id*. at p. 65, italics added.) Inherent in this discussion is an unmistakable, rebuttable presumption of ignorance on the part of the employee. Thus, our Supreme Court has concluded the employer has the burden not only to assert the running of the statute of limitations but an affirmative burden to establish either written notice was given to the employee or the employee had, in fact, actual notice of his workers' compensation rights.

*Permanente Medical Group* v. *Workers' Comp. Appeals Bd.* (1985) 171 Cal.App.3d 1171 [217 Cal.Rptr. 873] supports this conclusion. In that case a medical provider sought reimbursement for expenses incurred during an injured employee's hospitalization. The employee was admitted to the provider's hospital where he underwent exploratory surgery which revealed damage resulting from asbestos exposure as a shipyard worker during the second World War. The employee filed a claim for benefits under the federal Longshoremen's and Harbor Workers' Compensation Act (Act) (33 U.S.C. §§ 901-950), but he did not file an application for adjudication of the claim under the California Workers' Compensation Act. Over three years later, the medical provider filed its own application for adjudication of a claim seeking reimbursement for its expenses incurred during the employee's hospitalization. The workers' compensation judge determined that the provider's application for compensation was filed more than one year following the date of injury and was thus barred by the statute of limitations. (§§ 5405, 5412.)

The Third District Court of Appeal, in *Permanente,* annulled the board's decision denying reconsideration and remanded the matter to the appeals board for further proceedings. The court held that respondents, the board and the employer, failed to meet their burden of establishing the medical provider's claim was untimely, since the limitations period was tolled for the period of time that the employee was unaware of his rights under the Workers' Compensation Act and there was no evidence showing the employee was aware of his rights at any time before the provider's claim was filed. The case clearly holds that the respondents bore the burden of proving the employee had actual knowledge that he might be entitled to relevant workers' compensation benefits. As no evidence was presented showing the employee was aware of his rights, the reviewing court concluded respondents failed to meet their burden in establishing the statute of limitations had run and reversed the board's opinion and order and remanded. (171 Cal.App.3d at pp. 1182-1183.)

■ In the instant case, the "observ[ation]" of the board that the knowledge of the employer was somehow imputed to the employee by the fact that the employee was "one of the owners of a small medical corporation" is faulty on two points. The most obvious is the conclusion that petitioner was an employee of a "small medical corporation." Neither the summary of evidence nor the findings of fact contain any indication that this group of doctors constituted a corporation. The record is silent as to whether it was a partnership, corporation or merely an association. The petition for writ of review alleges "the employer, Doctors Moore, Newman and Sidders was a general partnership." Respondent Employee Benefits Insurance Company denies this allegation on the basis of lack of information or belief sufficient

to enable it to answer said allegations in its answer to the petition for writ of review. Since there is no evidence to support this "observ[ation]" of the board, a decision based on said observation must be annulled. (*City of Santa Ana* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 212, 219 [180 Cal.Rptr. 125].)

The instant case, upon the record before us, presents a unique or at least unusual factual situation. It is alleged that petitioner sustained two specific injuries to his back while employed as a physician and surgeon by Drs. Moore, Newman and Sidders (the petitioner). As stated, the record does not reflect whether the three doctors had formed a corporation, a partnership or merely an association. If a corporation, a recognized legal entity, then a true employer-employee relationship existed between the corporation and petitioner. However, if there was no corporation but rather a partnership or mere informal association, then petitioner may or may not be an employee. He could be an independent contractor, an entrepreneur. If an employee of a corporation, then the notice requirements of section 5402 would apply as well as the rebuttable presumption of ignorance on the part of the employee as enunciated in the *Kaiser* (*Martin*) case. However, if petitioner was not an employee, as in the case of a mere association, or an employer and employee as in the case of a partnership, then, in our view, the aforesaid notice and presumption requirements would not be applicable. The Legislature could not have intended that a person with knowledge of a potential claim for benefits must give notice to oneself. We also note the petitioner apparently received workers' compensation benefits incident to each of two injuries to his back, i.e., in 1981 and 1983, specifically, the providing of medical benefits, treatment and hospitalization. Petitioner and his employer, if there was one, presumably were aware of these facts. Further, as a practicing physician and surgeon, we would think petitioner would have knowledge, possibly expert knowledge, of the existence of workers' compensation rights and entitlement to workers' compensation benefits if one is injured in the course and scope of employment. However, the record before us is silent as to all of these matters. Thus, the opinion and order of the board that the statute of limitations was not tolled and that the statute had run as to the first injury in 1981, must be reversed and remanded for further proceedings in light of the opinions and conclusions set forth herein.

## II. APPORTIONMENT

Petitioner sustained an industrial injury to his back on March 25, 1981, and again on February 7, 1983. In 1981, petitioner suffered excruciating back and right leg pain while bending over to assist a patient off an examining table. This injury initiated disc bulges at L-3 and L-4, requiring brief hospitalization. Approximately six weeks later, petitioner returned to work

but continued to experience residual low back pain and aching in his right leg.

Dr. Armstrong's report, after reviewing petitioner's medical file, made the following statement: "Although he 'got by' during the next year or two, there seems to be consensus from all parties, seeing him then and subsequently up through and including the present, that the back and right leg were never quite the same as they were before the 1981 injury and never quite as strong as they were previously. He continued to work but had to be more careful and protected to some degree. In other words, it never recovered completely but was good enough so that he didn't have to have invasive measures and enough so that he got by in his practice albeit with ongoing difficulty."

Petitioner testified that following the 1981 injury and prior to the 1983 injury, he had to restrict his movements at work by avoiding stooping and lifting.

The second injury occurred while he was standing and performing as an assistant surgeon on three consecutive days. Subsequent to the 1983 industrial injury, the petitioner testified he reduced his workload substantially. Although he liked to walk two miles per day it took him twice as long to do so after his 1983 injury. Standing or sitting for more than an hour made his pain worse subsequent to the 1983 injury. He could not run or jog and had difficulty walking up steep grades. In addition, after the 1983 injury, being on his feet five or six hours per day would cause moderate fatigue and weakness and when the pain was "bad" he would lie on the floor with his feet propped up on the ottoman. He took medication twice a day subsequent to the 1983 injury.

Two of the physicians who examined petitioner subsequent to his 1983 injury apportioned the permanent disability of the applicant as 50 percent to the 1981 injury and 50 percent to the 1983 injury. The treating physician, Dr. Kenneth Jennings, determined that only 10 percent of the permanent disability should be attributed to the prior injury and the examining physician, Dr. John B. Armstrong, determined that 35 percent of his rating factor should be assigned to the injury of March 25, 1981, and 65 percent to the injury of February 7, 1983.

The workers' compensation judge submitted the case for a recommended permanent disability rating by the disability evaluator, stating, inter alia, "Consider that applicant had a prior back disability which precluded stooping and lifting."

The disability evaluator determined that the prior injury should be given a permanent disability rating of 50 percent and the second injury a permanent disability rating of 29.2 percent and then proceeded to substract the disability attributed to the prior injury from the present disability, leaving a zero balance.

When the workers' compensation judge determined that the one-year statute of limitations had run on the first injury, the board concluded that no award of permanent disability could be allowed for either of the two industrial injuries and an order to this effect was entered in each of the consolidated cases.

Petitioner complains the board extracted a "prophylactic restriction testified to by the applicant and contained in the report of Dr. Armstrong" and used this as the sole evidence for the conclusion that a preexisting back disability precluded stooping and lifting. Essentially, petitioner is complaining that the board's conclusion was not supported by substantial evidence in light of the entire record. (*Amico* v. *Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d 592, 598 [117 Cal.Rptr. 831].)

The statutory formulae that govern the matter of apportioning permanent disability are contained in two sections of the California Labor Code. The first of these, section 4663, deals with situations involving aggravation of preexisting *disease* by industrial injury, and reads as follows: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

The other provision, section 4750, deals with situations where the residuals of a compensable injury are superimposed upon "previous permanent disability or physical impairment." Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." The language of these sections has remained virtually unchanged for more than 50 years. (Stats. 1917, ch. 586, § 9, p. 836.)

The seminal case dealing with the subject of apportionment, as it pertains to preexisting disease, is *Tanenbaum* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 615 [52 P.2d 215]. The situation was one where a latent arthritic condition, assertedly asymptomatic prior to industrial injury, was "lighted up" by the injury. The condition was rated 33⅓ percent and apportioned ⅓ to "pre-existing dormant disease" and ⅔ to industrial injury. This result was affirmed by the court. (At pp. 617-619.)

In 1968, the California Supreme Court interpreted section 4663 when it decided *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928], in which Justice Tobriner, speaking for a unanimous court, cited the *Tanenbaum* case and distinguished the case at bar on the ground that nowhere in its medical reports was there an indication that the employee's disability was partially "due to the natural progress" of his preexisting arthritic condition. The court stated: "Although the board must rely on expert medical opinion in resolving the issue of apportionment, an expert's opinion which does not rest upon relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence upon which the board may base an apportionment finding." (*Id.* at p. 798.)

The "incorrect legal theory" mentioned by the court had reference to the doctor's apparent assumption that disability is apportionable between the effects of disease and injury without the necessity for showing that part of it was due to natural progress of the underlying pathology, and to the doctor's opinion that the employee would have recovered sooner had he not had the preexisting condition.

Here, petitioner is apparently complaining that there was no competent evidence presented at the hearing whereby it could be determined whether any symptoms experienced by the petitioner after his first injury would still have been present if petitioner had not suffered the second industrial injury.

However, *Zemke, supra,* 68 Cal.2d 794, and *Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832 [92 Cal.Rptr. 1, 478 P.2d 937], another case relied upon by petitioner, interpret section 4663 whereas the decision of the workers' compensation judge before us was decided pursuant to section 4750.

"This section [4750] has been interpreted to mean that, 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last

injury.' (*Smith* v. *Industrial Acc. Com.,* 44 Cal.2d 364, 365 [282 P.2d 64]. See also *Edson* v. *Industrial Acc. Com.,* 206 Cal. 134, 138-139 [273 P. 572].) The purpose of this statutory provision is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury, but only for that portion which is attributable to the subsequent industrial injury. (See 2 Larsen, Workmen's Compensation Law (1961) pp. 54-61; Comment (1956) 44 Cal.L.Rev. 548.)" (*State Compensation Ins. Fund* v. *Industrial Acc. Com.* (*Hutchinson*) (1963) 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902].)

■ Nevertheless, section 4750 must be construed in light of the rule that the employer is liable to the extent the industrial injury accelerates, aggravates or "lights up" the preexisting disability or impairment. (*Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 237 [145 Cal.Rptr. 22].)

"A permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. [Citations.] The previous condition, as to which apportionment is sought, must be actually 'labor disabling.' [Citations.] 'While the permanent partial disability need not have existed prior to work exposure [citation] nor need it be of industrial origin, known to the claimant at the time of the subsequent injury, or the subject of a prior rating [citation], or known to the employer [citation], nevertheless it must antedate the subsequent injury [citation] and it must be permanent in character. [Citations.] Although the prior disability need not be reflected in the form of loss of earnings, if it is not, it must be of a kind upon which an award for partial permanent disability could be made had it been industry caused. This is necessary to distinguish [it] from a 'lighting up' aggravation, or acceleration of a preexisting physical condition where the employer is to be held liable for the whole. [Citations.]' . . . Further, the preexisting disability need not have interfered with the employee's ability to work at his employment in the particular field in which he was working at the time of the subsequent industrial injury. [Citations.] The ability of the injured to carry on some type of gainful employment under work conditions congenial to the preexisting disability does not require a finding that the preexisting disability does not exist. [Citation.]" (79 Cal.App.3d at pp. 237-238.)

A preexisting disability cannot be established by a "retroactive prophylactic work restriction" on the preexisting condition placed on the injured after the subsequent industrial injury in the absence of evidence to show that the worker was actually restricted in his work activity prior to the industrial injury. Where the injured was actually under a prophylactic

restriction for a preexisting condition at the time of the industrial injury, apportionment to a preexisting disability is proper. It is only the retroactive application of a prophylactic restriction to an otherwise nonexistent previous disability that is prohibited. (79 Cal.App.3d at p. 238.)

■ In the instant case there was substantial evidence that the petitioner had suffered a permanent disability in 1981, prior to the second injury in 1983. By Dr. Sidders's own testimony he refrained from stooping and lifting due to the 1981 back injury. This 1981 injury was caused by the assisting and/or lifting of a patient off of the examining table. Therefore, petitioner was actually restricted in his work activity by way of the 1981 injury.

The workers' compensation judge relied not only on the petitioner's testimony that he avoided stooping and lifting but also on Dr. Armstrong's report that as a result of the 1981 injury, petitioner had developed some elements of a midlumbar disc bulge. Thereafter, petitioner had to be more careful and protective of his back but was able to "get by" with his work albeit with ongoing difficulty.

Dr. Armstrong's report combined with petitioner's testimony established that petitioner experienced an actual incapacity to perform the tasks usually encountered in his employment and a physical impairment of the body. (See *Gross* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 397, 401 [118 Cal.Rptr. 609].)

Apportionment involves a factual inquiry. (See *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711, 716 [129 Cal.Rptr. 161, 548 P.2d 361].) The apportionment in question would be determined by ascertaining the extent of the disability resulting from the first injury and then subtracting that or any portion of it which overlaps from what was determined to have been the disability resulting from the second injury. (*Ibid.*)

Where there is evidence of an applicant's physical condition before and after an industrial injury, the workers' compensation judge has the right to determine the percentage of apportionment "without the necessity of medical experts expressing percentages." (*W. P. Fuller & Co.* v. *Industrial Acc. Com.* (1962) 211 Cal.App.2d 9, 20 [27 Cal.Rptr. 401].) "Based upon its experience in relating physical condition to ability to work, the commission was in equally as good position to evaluate percentages of disability arising from those conditions as the medical men." (*Ibid.*) The decision of the workers' compensation judge that the petitioner suffered a "permanent disability" between the first injury and the second injury is supported by substantial evidence.

Although, as has been stated, there is evidence to support the board's determination that immediately prior to the second injury Dr. Sidders was restricted from stooping and lifting, it is our view that the evaluator's determination that Dr. Sidders did not sustain a compensable injury is unreasonable and unsupportable in light of Dr. Armstrong's report. This is critical in that the evaluator was instructed by the workers' compensation judge to use Dr. Armstrong's report as the factual basis for the evaluation. A ruptured disc resulted in "a lot of weakness of the right thigh which proved remarkably resistant to improvement. . . . [I]t became a real functional handicap and he had to use a cane for a while and *predictably the leg tended to give way*. . . ." (Italics added.) Dr. Sidders, since the second injury, is working only "half time" and at a "lesser pace" than before. Dr. Sidders "[c]ontinues to have a variable degree of low back and right leg pain and occasional numbness—never completely absent, unpleasant to moderately painful considerable portion of the time and occasionally if he should exceed [*sic*] even modestly quite painful."

The medical evidence as summarized in Dr. Armstrong's report is uncontradicted that prior to the first injury, Dr. Sidders "had no significant back trouble of any sort" and the excruciating back pain experienced due to the first injury had subsided to some extent at the time of the second injury. In spite of some successful treatment for the second injury, Dr. Sidders continues to experience "a variable degree of back and right leg symptoms plus a tremendous amount of residual weakness of the right thigh."

Dr. Armstrong clearly indicates by his repeated reference to the second injury as the "coup de grace injury/aggravation" that Dr. Sidders is significantly in worse condition than he was immediately prior to the second injury.

It is contrary to reason to conclude, as did the evaluator and the board, that "the pre-existing restriction from stooping and lifting totally overlapped the disability due to this injury."

Therefore, we conclude the reliance by the workers' compensation judge and, in turn, the board upon the rating of the evaluator is not only unreasonable, but not supported by the evidence. Inadequate reasoning having been provided by the board for its acceptance of a zero percent compensable disability rating, the right of meaningful review has been seriously compromised. We, therefore, annul the board's decision on this basis as well. (See *City of Santa Ana* v. *Workers' Comp. Appeals Bd., supra*, 128 Cal.App.3d 212, 220-222.)

The opinion and order of the board is reversed and the matter is remanded to the board for further proceedings consistent with our conclusions herein. Petitioner is awarded costs of appeal.

Hamlin, J., and Stone (W. A.), J., concurred.