[No. A044283. First Dist., Div. Five. Mar. 14, 1990.]

DENNIS McDANIEL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and WESTERN
EMPLOYERS INSURANCE COMPANY, Respondents.

COUNSEL

Neyhart, Anderson, Nussbaum, Reilly & Freitas and Frank J. Reilly for Petitioner.

Paul W. Ko, Cynthia L. Sletto and Hanna, Brophy, MacLean, McAleer & Jensen for Respondents.

OPINION

KING, J.—In this case we hold that when an employer or its insurance carrier advances money for payment of an injured employee's health care expenses, knowing of a potential claim of workers' compensation benefits for an industrial injury, the payment tolls the normal one-year limitation within which an original proceeding must be commenced and triggers a five-year limitation period. If the employer or its carrier thereafter gives notice to the employee of its denial of liability for industrial claims, the notice terminates the five-year limitation and causes a new one-year limitation period to commence.

Petitioner Dennis McDaniel (applicant) seeks review of the decision of the Workers' Compensation Appeals Board (Board), holding that applicant's claims for cumulative industrial heart injury, filed more than one year after the relevant date of injury, but within one year from the date of the denial notice, are barred by the one-year statute of limitation set forth in Labor Code[1] section 5405. The Board bases its decision solely on its finding that applicant was aware of his right to file a claim for workers' compensation benefits prior to receiving the denial notice from Western Employers Insurance Company (respondent). Therefore, the Board determined that respondent's failure to properly notify applicant of his rights, as required by law, did not contribute to his delay in filing the claims.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Applicant contends that the time to file his claim was extended to five years from the date of injury under section 5410[2] because respondent voluntarily provided medical benefits for the heart condition. When respondent subsequently denied liability for applicant's claims, applicant then filed applications with the Board within one year from the date of the denial notice. Therefore, asserts applicant, his claims were timely filed.

We concur, and for the reasons discussed below, we annul the Board decision.

### FACTUAL AND PROCEDURAL BACKGROUND

Applicant, born June 15, 1925, served as an assistant to the president, executive vice-president, corporate director, and corporate president for E.H. Morrill Company (Morrill) from October 1, 1969, until September 1983. For the period of April 1, 1981, to April 1, 1982, while applicant was serving as corporate president, he sustained a cumulative industrial injury to his heart resulting from occupational stress. For the period of July 1982 to September 9, 1983, applicant sustained a second cumulative industrial injury to his heart resulting from occupational stress while also serving as corporate president for Morrill.

In 1982, applicant first suffered from cardiac problems, and underwent coronary bypass surgery on April 9, 1982. In August 1982, he returned to work following a period of disability, during which time he had received state disability benefits. Applicant continued working for Morrill until he was terminated in September 1983. In September 1983, applicant underwent a second heart surgery, and again received state disability benefits for a period following the surgery. Applicant has not returned to work.

On January 4, 1983, respondent entered into an agreement with Lien Services of Northern California (Lien Services), whereby a lump sum payment was made to Lien Services, apparently to be distributed to various private health care providers in full satisfaction of respondent's potential liability to these providers for medical care provided to applicant in connection with his heart condition.[3]

---

[2] As pertinent, section 5410 reads: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation, including vocational rehabilitation services, within five years after the date of the injury upon the ground that the original injury has caused new and further disability or that the provision of vocational rehabilitation services has become feasible because the employee's medical condition has improved or because of other factors not capable of determination at the time the employer's liability for vocational rehabilitation services otherwise terminated. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction within this period. . . ."

[3] On January 4, 1983, Philip Boehm of Lien Services sent a letter to respondent, stating as follows: "This is to confirm our telephone conversation of this date whereby you agreed to

On March 14, 1983, and March 24, 1983, respectively, Lien Services and respondent executed an agreement settling respondent's liability to Lien Services for medical treatment provided applicant for his heart condition.[4]

On April 13, 1984, respondent sent applicant a denial notice stating that it was denying liability for any claim of workers' compensation in connection with the heart condition because it was not work related.[5] The denial notice designated a date of injury of August 8, 1982, and indicated that respondent gained knowledge of the injury on September 9, 1982.

On April 10, 1985, within one year of the denial notice, applicant filed two applications for workers' compensation benefits.

On June 30, 1986, Robert Woods Brown, M.D., examined applicant as an agreed medical examiner. Dr. Brown concluded that applicant's reaction to a stressful employment situation at Morrill was a contributory cause to his heart condition.

On July 29, 1988, the workers' compensation judge (WCJ) issued his decision. The WCJ found that applicant's heart condition was work related, and further determined that applicant's claims were not barred by the

---

pay us 50% of all medical costs in connection with injuries sustained by Mr. McDaniel to his heart on or about March 30, 1982. As of this date, Occidental Life has paid the sum of $26,439.82. Your share as agreed would be $13,219.91. [¶] Please make your check payable to Lien Services of Northern California and mail same to the address below. Further, this letter constitutes our full release in connection with this case. If any additional release papers are required, please forward them to me."

[4] The agreement reads, as pertinent: "The parties hereto Stipulate to the following facts: [¶] I. Dennis McDaniel born June 15, 1925, while employed within the State of California as a president on March 8, 1982, by E.H. Morrill company whose compensation insurance carrier was Western Employers Insurance Company sustained injury to his heart/coronary artery disease. [¶] II. The following medical providers furnished benefits. . . . [¶] The medical providers assigned Lien Services of Northern California to recover monies expended. [¶] III. There is a serious and legitimate dispute as to whether the coronary artery disease was related to employment at E.H. Morrill. [¶] IV. In order to avoid the delays, hazards and expense of litigation, Lien Services of Northern California, on behalf of the above listed medical providers, agrees to accept $11,491.91 in full satisfaction of it's [sic] lien. [¶] In consideration of said payment, Lien Services of Northern California agrees to waive any present, past or future claims for reimbursement or future payment for costs which may occur as a result of this incident."

[5] As pertinent, the denial notice reads: "We have been notified of your claim for an industrial injury. I am handling your claim for workers' compensation benefits on behalf of your employer. [¶] After careful consideration of all available information, we have concluded that we cannot accept any responsibility to pay workers' compensation benefits for your claimed injury. Your claim is denied because your heart condition did not arise out of or in the course of your employment. [¶] . . . You may also consult with an attorney of your choice, or you may appeal this decision to the Workers' Compensation Appeals Board within on [sic] year of the date of your claimed injury."

statute of limitation.[6] Applicant was awarded a permanent disability of 34 percent and future medical treatment.

On October 17, 1988, the Board granted respondent's petition for reconsideration, finding that applicant's claims were barred by the one-year statute of limitation set forth in section 5405, subdivision (a). Applicant knew his heart condition was work related on September 10, 1983, determined the Board, and failed to timely file a claim for workers' compensation benefits within one year from that date.

In its only reference to respondent's payment to Lien Services for medical care, the Board stated that the voluntary furnishing of a benefit did not preclude respondent, pursuant to section 4909,[7] from later raising the statute of limitation issue in a formal proceeding before the Board.

## DISCUSSION

In California, the statutes of limitation consist of several provisions with varying limits of time depending on the particular situation. (§§ 5404-5412.) Section 5405 sets forth the basic time limitation for filing an application for workers' compensation benefits and invoking the Board's original jurisdiction. ■ It provides that the limitation period for normal benefits (medical and disability) is one year from whichever of the following results in the longest period: (a) the date of the injury; (b) the date of the last indemnity payment for temporary or permanent disability; or (c) the date of the last furnishing of any medical or hospital benefits. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1989) § 18.03[1], pp. 18-12–18-13.)

■ If an employer or its insurance carrier, knowing of a potential claim, furnishes medical treatment or advances sums for a purpose bearing a clear relationship to an industrial injury, the one-year limitation under section 5405, subdivision (a), is tolled. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Webb*) (1977) 19 Cal.3d 329, 333 [137 Cal.Rptr. 878,

---

[6]The WCJ concluded that the claims were not barred by the statute of limitation for three reasons: "The first is that both applications were filed within one year of the denial letter. The second is that defendants provided for much of the medical treatment either by way of their payment to Lein [*sic*] Services, or otherwise. The third is that defendants were clearly aware of the potential claim as witnessed by their negotiations with Lien Services, and failed in any way to inform applicant of these negotiations, or of his potential rights as set forth in Rule 9880 of the Administrative Director."

[7]As pertinent, section 4909 reads: "Any payment, allowance, or benefit received by the injured employee . . . when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer. . . ."

562 P.2d 1037]; *City etc. of San Francisco* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 1001, 1011 [88 Cal.Rptr. 371, 472 P.2d 459].) Once the one-year limitation is tolled by the voluntary furnishing of benefits, the five-year rule of section 5410 is in turn triggered. (*Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 290 [54 Cal.Rptr. 100, 419 P.2d 164].) In other words, after the voluntary furnishing of benefits, including medical treatment, section 5410 extends the period within which an original proceeding may be instituted from one to five years. (*Id.*, at pp. 290-291; *J.T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 33 [200 Cal.Rptr. 219]5; *Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd.* (1978) 76 Cal.App.3d 818, 822-824 [143 Cal.Rptr. 131].)

The legislative purpose behind the tolling provision of section 5410 "is to prevent a potential claimant from being misled by an employer's voluntary acts which reasonably indicate an acceptance of responsibility for the employee's injury." (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd. (Webb)*, *supra,* 19 Cal.3d at p. 334.) As long as the employer's conduct reasonably suggests that the filing of a claim is unnecessary, the tolling of the statutory time period is entirely proper and in accord with the benefit extension principles of section 5410 and section 5405, subdivisions (b) and (c). (*Id.*, at p. 336; see *Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.*, *supra*, 65 Cal.2d at p. 291.)

However, once a potential claimant has been fully informed that the employer and its carrier disclaim compensation liability for an industrial injury, the statute of limitation begins to run no later than the date on which such notice was given. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd. (Webb)*, *supra,* 19 Cal.3d at p. 335.)[8]

■ Turning to the facts before us, it is undisputed that respondent paid Lien Services a sum of $13,219.91 as payment for medical treatment provided applicant in connection with his heart problems. Respondent voluntarily made this payment in order to discharge its potential obligation under section 4600 to furnish medical treatment in connection with applicant's potential industrial heart injury claim. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd. (Webb)*, *supra,* 19 Cal.3d at p. 333; *City etc. of San Francisco* v. *Workmen's Comp. App. Bd.*, *supra*, 2 Cal.3d at p. 1011.) Accordingly, section 5405, subdivision (a), was tolled, and pursuant to section 5410, applicant had five years from September 10, 1983, in which to

---

[8] Receipt of actual or constructive knowledge of any work-related injury (§ 5402) triggers the employer's duty to notify the injured employee within five days in writing of his or her workers' compensation rights, or within fourteen days if there is a delay in determination regarding entitlement or a denial of liability. (Cal. Code Regs., tit. 8, §§ 9812, 9880.)

file a formal claim. (*Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.,* *supra,* 65 Cal.2d at p. 290; *J.T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.,* *supra,* 153 Cal.App.3d at p. 335; *Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd., supra,* 76 Cal.App.3d at pp. 822-824.) When the denial notice was sent, applicant then had one year from the date of disclaimer in which to file a formal claim. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Webb*), *supra,* 19 Cal.3d at p. 335.)

The Board, however, focuses its decision solely on the fact that applicant knew on September 10, 1983, that his heart condition was work related.[9] On the state disability application, filed on September 10, 1983, applicant indicated that his heart condition was due partially to the stress and strain of his employment with Morrill. He testified that his cardiologist informed him of this relationship. It is correct in light of these facts that respondent's failure to comply with administrative and statutory notice requirements was irrelevant once applicant knew that his heart condition was work related and that he had a right to file a claim for workers' compensation benefits. (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Martin*) (1985) 39 Cal.3d 57, 64-65 [216 Cal.Rptr. 115, 702 P.2d 197]; *Sidders* v. *Workers' Comp. Appeals Bd.* (1988) 205 Cal.App.3d 613, 622 [252 Cal.Rptr. 304].) However, the Board should not have ended its inquiry here.

In *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Martin*), *supra,* 39 Cal.3d 57, unlike the matter before us, there was no evidence that the employer voluntarily furnished medical benefits, or any benefits, for the alleged industrial injury. The employer's conduct in *Martin* in no way reasonably suggested to the injured employee that it was providing benefits without the necessity of filing a claim. Such is not the case herein. Applicant testified that he first thought about workers' compensation after returning to work in August 1982 following the first surgery. He recalled receiving a letter from Lien Services. He did not pay much attention to the letter, but testified that it was his understanding that Lien Services represented his private health insurance company, Occidental Life, and was seeking to recover the costs of his heart surgery from respondent.[10]

---

[9] The fact that applicant had actual knowledge of his right to file a claim for workers' compensation benefits on September 10, 1983, is relevant in the matter before us only to the extent that it was the applicable date of injury for purposes of the statute of limitation under section 5412, which defines the date of injury for cumulative injuries as "that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

[10] This letter was not produced by the parties. Apparently, no such letter exists. However, by supplemental letter brief dated June 27, 1989, counsel for applicant produced a copy of the letter from Lien Services to respondent dated January 4, 1983. (See fn. 3, *ante.*) Although the record is not clear, it would appear that applicant was referring to this letter.

Applicant further testified that it was his understanding that his workers' compensation file was initiated at that time. In September 1983, prior to leaving work to enter the hospital for his second heart surgery, he asked a representative from respondent's insurance agency, Coroon and Black, whether he did in fact have an active workers' compensation claim pending with the insurance carrier for Morrill. In response, he was told that respondent had paid some of the medical bills incurred in connection with the heart problems.

Furthermore, the representative from Coroon and Black gave applicant a ledger sheet, which contained figures denoting that respondent had paid for approximately one-quarter of applicant's first surgery. There was also a notation on the ledger sheet that the heart surgery was due to the stress and strain of applicant's employment. Applicant testified that this made sense to him, given the information from the cardiologist that occupational stress and strain was a contributing cause to his heart disease.

Applicant was not advised that respondent had compromised with Lien Services and settled its liability for a lump-sum payment. Nor was he told that respondent was going to contest the employment relationship of his heart condition, and on that basis, deny liability. On this record, applicant's belief that respondent had accepted liability for his heart injury, is certainly reasonable. Until he received the denial notice, applicant reasonably believed that respondent had accepted responsibility for his heart injury, and the fact that he had actual knowledge of his workers' compensation rights was irrelevant.

The fact that the voluntary provision of benefits does not preclude an employer or its carrier under section 4909 from later contesting liability before the Board is inconsequential in the case before us. Because respondent voluntarily provided medical benefits in connection with applicant's heart injury, applicant had five years from the date of injury to file his claims under section 5410. It was not until he received the denial notice from respondent on April 13, 1984, that the five-year tolling period under section 5410 ceased, and the one-year period commenced under *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Webb*), *supra*, 19 Cal.3d at page 335.

Accordingly, applicant's claims, filed on April 10, 1985, were timely. The Board decision is annulled and the matter is remanded to the Board for further proceedings consistent with the views expressed herein.

Low, P. J., and Haning, J., concurred.